(Decided January 8th, 1896.)

---

LEVI WITZ AND ISAAC WITZ vs. SAMUEL R. TRE-GALLAS.

*Arbitration and Award—Jurisdiction of Equity to Enforce Award—Withdrawal of Arbitrator—Certainty and Finality of Award—Mistake of Arbitrators—Matters Submitted.*

Equity has jurisdiction to enforce the distribution of a fund according to the terms of a valid award made by arbitrators selected by the parties in interest.

An agreement for the submission of a controversy to arbitration, provided that the arbitrators should write their names on the agreement as evidence of acceptance. One of the arbitrators who accepted the appointment and acted as such neglected to sign the submission. *Held*, that the award was not for that reason void.

After two of the three arbitrators had agreed upon the award, the third arbitrator refused to unite in their decision, and said that he would withdraw, and did withdraw. The majority then wrote and signed the award and submitted the same to the third arbitrator, who refused to sign it. The submission provided that "the majority decision shall be the unanimous decision." *Held*, that since two arbitrators had power to make the award if the third could not agree,

no one of them could defeat it by withdrawal, and that the award made as above stated was valid.

Before the two arbitrators named in the submission had selected a third, in consequence of their disagreement, counsel for one of the parties appeared before the two arbitrators in the absence of counsel for the other parties. There was nothing to show that any injury was thereby caused. *Held*, that the award afterwards made was not invalidated.

After the dissolution of a partnership, the affairs of the concern were wound up by certain liquidating partners, and disputes having arisen, all parties agreed to submit their "partnership differences" to arbitration, without stating what those differences were. The questions decided by the arbitrators were those argued before them by the parties. One of them was as to the liability of the liquidating partners for the defalcation of a bookkeeper employed by them, and this question arose in connection with the distribution of the assets. Some matters of detail were argued which were not mentioned in the award, but were necessarily covered by the determination. *Held*, that the arbitrators had neither exceeded their powers by passing on matters not submitted, nor failed to consider all the matters submitted.

The burden of proof is on the party attacking the award to show that it is not coextensive with the submission.

It will be presumed that the arbitrators took into consideration all the evidence submitted to them and the theories presented by the respective parties.

Where the differences between partners submitted to arbitration were not as to the amounts received by them, or as to the assets of the firm, but as to the proportions in which they were respectively entitled to share in the assets, an award giving the rule for calculating the amounts to be paid to and by them respectively is sufficiently certain.

When there is nothing on the face of an award to show that any mistake of law has been made, and when a question of law was submitted to the arbitrators, their decision is final.

Equity may sometimes grant relief for palpable mistakes of fact in awards, but when the facts that have been submitted are such as may be determined differently by fair-minded people, the award of those selected for the purpose is not subject to review.

Appeal from a decree of Circuit Court No. 2, of Baltimore City (WICKES, J.), directing an Auditor of the Court to state an account between the parties in accordance with the terms of the award of certain arbitrators filed in the

cause.   The parties were members of the late firm of Witz, Biedler & Co.   During the existence of the firm, the written articles of copartnership were orally modified by unanimous consent in some important particulars—methods of crediting interest different from those provided in the articles were adopted ; annual adjustments of capital accounts were made instead of triennial adjustments, as contemplated in the articles, and so on.

When the firm dissolved in 1889, an adjustment of the capital and personal accounts of the members was had, in accordance with the agreement under which the firm had for years been doing business ; with the result that $344,-846.00 was found due from the firm to its members, which was divided among them according to their respective percentages, as per the method of determining and dividing capital which had been in vogue among the partners for some years.   This aggregate of $344,846 capital consisted almost entirely of uncollected book debts, which, together with the stock, were turned over to the liquidating partners to be converted into money.   As these debts were collected, the amounts realized were periodically divided among the partners according to their proportional interest in the aforesaid capital.   That is to say, on each $100 collected, Levi Witz was to receive $32.41 ; W. T. Biedler was to receive $24.06 ; S. R. Tregellas was to receive $22.19 ; and Isaac Witz was to receive $21.34.   Over $175,000 was collected during the first twenty months of liquidation, and in accordance with this ratio was distributed among the partners.   About twenty months after the dissolution, and after the above amount had been thus distributed, the appellants became dissatisfied with this method of division, and proceeded to reset the whole account and to charge off the balance of uncollected assets as losses, whether collectible or not, charging them off against each partner, not in the ratio in which they had been credited to him, but in the same ratio in which profits had been divided during the last year of the firm.   Subsequent to the dis-

solution, it was also discovered that a clerk named Breidner had embezzled the sum of $34,860.55 from the firm before dissolution, and the further sum of $4,636.63 after dissolution, from the liquidating partners. His defalcations, however, constituted one continuous act.

Differences then arose between the partners, not only as to how the net assets should be distributed, but as to how these two sums constituting the said defalcations of Breïdener should be charged off to the partners and as to the principles upon which, and the ratios in which, all other items which the appellants had caused to be charged off upon the books should have been charged off to the partners, and as to the proportions in which any items should, in the future, be charged off, and as to the proportions in which the expenses of liquidation should be borne by the parties. These differences were referred to arbitration by the submission set forth in the opinion of the Court.

The award was as follows: "The undersigned, two of the three arbitrators appointed under the provisions of a certain agreement among Levi Witz, Isaac Witz, Wm. T. Biedler and Samuel R. Tregellas, do hereby award and decide that all the assets of the late firm of Witz, Biedler & Co. shall be divided among the respective partners thereof in the following proportions, that is to say : Levi Witz shall receive $111,772—$344,846, or say 32.41 per cent. ; Isaac Witz shall receive $73,580—$344,846, or say 21.34 per cent. ; Wm. T. Biedler shall receive $82,964—$344,846, or say $24.06 per cent. ; Samuel R. Tregellas shall receive $76,530—$344,846, or say 22.19 per cent.

"Each of the partners, who has received more than his share, as above defined, of the assets thus far distributed, shall return the same, and in the future all assets received shall be distributed in the proportion above set forth. The Bridener defalcation made before the dissolution of the firm, and any and all other items charged off or to be charged off, shall be charged to the respective partners on their accounts in the same proportion as above declared. All ex-

penses of liquidation shall also be divided or charged to each partner in the proportions above set forth. The three liquidating partners, Levi Witz, Isaac Witz and Wm. T. Biedler, shall repay to the firm the sum of $4,636.61, the amount of the defalcation of the bookkeeper, Bridener, made after the dissolution of the firm. Witness our hands and seals," etc.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, ROBERTS and BOYD, JJ.

*Wm. Pinkney Whyte* and *Charles Marshall,* for the appellants.

The following propositions will be urged upon the consideration of this Court:

1. There is no jurisdiction in a Court of Equity in Maryland for the enforcement of an award. Not a case can be found here where chancery has intervened to enforce the specific performance of such an award. *Howard* v. *Warfield,* 4 H. & McH. 38 (marg.) A case to restrain its execution at law may be found, but none to enforce it in equity.

2. The arbitrator, D. E. Conklin, did not sign his acceptance on the submission, as required, before signing the award. This instruction in the submission should have been strictly followed. *Pratt* v. *Hackett,* 6 Johns (N. Y.) 14. It was a condition precedent, and should have been complied with before Mr. Conklin acted.

3. The award is not final. An account should have been taken and the sum due by each partner should have been stated as ascertained. *Russell on Arbitration,* 295. The award is invalid if only parcel of the submission is acted on, or *is not final,* so as to prevent any future litigation on the subject of the submission. *Griffith* v. *Jewett,* 7 H. & J. 70; 6 *Wait's Actions and Defences,* 543. Here the award is absolutely inoperative without an accounting under the direction of this Court, as shown by the very proceedings for its performance by aid of a Court of Equity.

4. It must appear that all the arbitrators heard the evidence, arguments, etc., as well those for as against the award, and must all be present at the meeting for deliberation. Conklin did not hear the statement of Arnold, the accountant selected by all the partners. Unless the submission provides differently, each one of the arbitrators must act personally in the performance of the duties of his office, as if he were sole arbitrator, for 'as the office is joint, if one refuse or omit to act the others can make no valid award. *Russell on Arbitration*, 222. English and American authorities are alike agreed on this.—All must be present throughout each and every meeting, equally, whether the meeting be for hearing the evidence or arguments of the parties, or for consultation or determination upon the award. The disputants are entitled to the exercise of the judgment and discretion, and to the benefits of the views, arguments and influence of each one of the persons whom they have chosen to judge between them ; and they are entitled to these not only in the award, but at every stage of the arbitration, even where a majority are empowered to decide. *Morse on Arb.*, 151 and 153 ; *Smith* v. *Smith*, 28 Ills. 60 ; *Hills* v. *Home Ins. Co.*, 129 Mass. 345 ; *Harryman* v. *Harryman*, 43 Md. 144. This principle was applied in a case where the arbitrators jointly decided upon an award and had it drawn up by a counsellor, after which it was carried to them separately and executed at their own places of residence. *Moore* v. *Ewing*, Coxe, N. J. 144 ; *French* v. *Butler*, 39 Mich. 79. The record shows that Conklin and Supplee had agreed upon the terms of the award before they met Devries for final action. This was irregular and vitiated the award. *Brewer* v. *Kingsley*, 1 Johns' cases, 334. Powers which are to be exercised jointly cannot be exercised separately. *Russell on Arbitration*, 224 ; *Moore* v. *Ewing*, Coxe, N. J. 144 ; *Rigden* v. *Martin*, 6 H. & J. 403.

5. Arbitrators were mistaken both as to the law and facts. The presumption of law that the partners had waived or

changed by practice the terms on which the profits should be divided, contrary to the articles of copartnership, is entirely rebutted by the change in the ratio of profits which were made on the renewal of each succeeding partnership. The stating of the division of the assets from time to time after the dissolution was merely tentative, and in no way bound the partnership on the final adjustment of their accounts.    The course of dealing must be so long as to demonstrate that they have all agreed to change the terms of the written instrument.    But here the written instrument is of so recent execution as to rebut any such presumption of law.

6. Sending for the attorney of the plaintiff, and allowing him to come, in the absence of the others, to explain his figures, and taking them which were not collected from the books, but furnished by one Smith, an employee, and not the bookkeeper of the firm.    On this ground alone, if for no other, the award should be declared invalid. *Kyd on Awards*, 354, 356; *Van Cortland* v. *Underhill*, 17 Johns. 405; *Emery* v. *Owings*, 7 Gill, 495; *Sisk* v. *Garey*, 27 Md. 401.

*William A. Fisher* and *John C. Rose*, for the appellee.

It is alleged by the answer, that the action of Mr. Devries, in declaring that he would withdraw from the arbitration, is fatal to the validity of the award.    The submission, however, expressly provided that two out of the three arbitrators might make a valid award.    It is respectfully submitted, that after the case had been fully heard, and all the evidence offered by any of the parties to the arbitration had been considered, and the arbitrators were ready to decide the case, an arbitrator could not, by any action he might take, prevent a majority from making a valid award.    The testimony in this case shows clearly that the arbitrators had heard everything that any of the parties desired to present; that, by the consent of all of them, a meeting was appointed at which the question of their award should be decided; that at this meeting, the position of all the three arbitrators was made

manifest; that the arbitrator, Mr. Devries, requested the others to defer action until another meeting, and that they agreed to this suggestion. In the meanwhile, he determined that unless they would change their minds, he would withdraw at the next sitting, and consulted the counsel of the appellants upon the question, as it appears from the testimony, he had often done before during the sitting. At the next sitting, finding that his colleagues were still of the same mind, he declared that he withdrew from the arbitration. There is not a tittle of proof that the arbitrators declined to hear any evidence offered to them, or declined to make any inquiry which they ought to have made. It is true that Mr. Devries said he wanted to have the books written up from the beginning. If the arbitrators accepted as correct, the principle for which Mr. Devries contended, such a writing up of the books might have been in certain aspects convenient or even necessary to the making of a proper award, but upon the principle contended for by the appellee and the defendant, Biedler, before the arbitrators, no such writing up was called for in any way. Whether the principle contended for by Biedler and the appellee was or was not correct, was one of the questions submitted to the arbitrators to decide, and they had or were about so to decide it.

When one of the arbitrators refuses to act any longer with the others, or withdraws from the arbitration, the others may proceed to their award; provided that, as in this case, two out of the three are authorized by the submission to make a binding award. *Kingston* v. *Kincsaud*, 1 Washington C. C. 453; *Morse on Awards*, 154; *Kunckle* v. *Kunckle*, 1 Dallas, 390; *Schultz* v. *Halsey*, 3 Sanford, 405; *Maynard* v. *Frederick*, 7 Cush. 247; *Bullock* v. *Bergman*, 46 Md. 275; *Mosely* v. *Simpson*, L. R. 16 Eq. 226; *Dodge* v. *Bennan*, 59 N. H. 138.

The only mistake of law alleged, being that the arbitrators have erroneously construed the articles of copartnership in the light of the firm's practice upon them, is not one

of those mistakes for which an award has sometimes been
set aside.    It is clear from the evidence, that the contract of
partnership had been modified in certain respects in practice.
What those modifications were, and what their effect was,
is simply one of those mixed questions of law and of fact,
which, if the case were tried before a jury for their determi-
nation, under such instruction as the Court might see fit in a
particular case to give.    In this case the very question de-
cided by the arbitrators was the one submitted to them and
argued before them.    It has been repeatedly held in this
State, that a mistake of law sufficient to avoid an award,
must be such a mistake as is apparent on its face. *Mal-
colm* v. *Hall*, 9 Gill, 172 ; *Goldsmith* v. *Tilly*, 1 Harris &
Johnson, 361 ; *Oliver* v. *Heap*, 2 Harris & McHenry, 477 ;
*Tillard* v. *Fisher*, 3 Harris & McHenry, 118; *Hewitt* v.
*State*, 6 Harris & Johnson, 95.    Where the question re-
ferred to the arbitrators was a question of law, their decis-
ion is final.    1 *Amer. & English Ency.* 676 ; *Kleine* v.
*Catava*, 2 Gallison, 69, 77 ; *Jackson* v. *Ambler*, 14 Johnson,
105 ; *Forbes* v. *Turner*, 54 Ga. 252.

*William A. Fisher* and *O. F. Hershey*, filed a brief for
W. T. Biedler, in behalf of the affirmance of the decree
below.

BOYD, J., delivered the opinion of the Court.

On the first day of January, 1881, Isaac Witz, Levi Witz,
Wm. T. Biedler and Samuel R. Tregallas entered into arti-
cles of copartnership, by which it was agreed what each
partner was to contribute to the capital, what interest
thereon was to be paid, what share of merchandise on hand
each was to receive in the event of dissolution of the firm, and
that the copartnership should continue for the term of three
years.    It was further agreed that after paying all expenses
and losses the appellee was to receive one-tenth of the
profits, and that the remainder should be divided equally
between the other three, but if the appellee furnished addi-
tional capital from two to fifteen thousand dollars, within

six months from the expiration of each year, his profits should be increased at the rate of one per cent. per thousand. A supplemental agreement was entered into by which the copartnership was continued until December 31st, 1886, on the terms mentioned in the original agreement, excepting with reference to the division of profits, which was changed so that Levi Witz and W. T. Biedler were each to receive thirty-one and a-quarter per cent., S. R. Tregallas twenty-five per cent., and Isaac Witz twelve and one-half per cent. On December 31st, 1887, another change was made, by which it was agreed that for two years from January 1st, 1888, Isaac Witz was to receive ten per cent. of the net profits, up to forty thousand dollars, as his special and full interest, and then the profits were to be divided as follows: To Levi Witz and W. T. Biedler each thirty-six and one-fourth per cent., and to S. R. Tregallas twenty-seven and one-half per cent.

The partnership continued until December 31st, 1889, when it was finally dissolved, and the assets were turned over to the appellants and W. T. Biedler, as liquidating partners, who proceeded to realize on them. After a large part of them had been collected and distributed, differences arose between the members of the firm, and on February 18th, 1893, an agreement was entered into " to submit said differences to arbitration." It was therein stated that Christian Devries was satisfactory as an arbitrator to three of the partners, and if Mr. Tregallas desired two, he was authorized to name one, and in case he did, and the two could not agree upon a conclusion, they could select an associate, and " the majority decision shall be the unanimous decision." The arbitrators were required to write their names on the agreement as evidence of their acceptance. It was further provided that either party could present his views in writing or orally and offer such evidence as he deemed advisable.

Mr. Tregallas exercised the right to name an arbitrator and selected J. Frank Supplee. Messrs. Devries and Sup-

plee accepted the appointment and entered upon their duties. Being unable to agree, they selected Daniel E. Conklin as their associate. Messrs. Supplee and Conklin signed an award which Mr. Devries declined to concur in, by which it was determined that the assets of the late firm of Witz, Biedler and Company should be divided between the respective partners in the proportions of 32.41 per cent. to Levi Witz ; 27.34 per cent. to Isaac Witz ; 24.06 per cent. to W. T. Biedler, and 22.19 per cent. to S. R. Tregallas, and the following provisions were also made in said award :

" Each of the partners who has received more than his share, as above determined, of the assets thus far distributed, shall return the same, and in the future all assets received shall be distributed in the proportion above set forth.

" The Bridener defalcation made before the dissolution of the firm, and any and all other items charged off or to be charged off shall be charged to the respective partners on their accounts in the same proportion as above declared.

"All expenses of liquidation shall also be divided or charged to each partner in the proportion above set forth.

" The three liquidating partners, Levi Witz, Isaac Witz and William T. Biedler, shall repay to the firm the sum of $4,636.61, the amount of the defalcation of the bookkeeper, Bridener, made after the dissolution of the firm."

The award was acceptable to Messrs. Biedler and Tregallas, but not to the Messrs. Witz, who declined to abide by it. Mr. Tregallas filed the bill in this case against the other three members of the firm, praying (1), that the defendants should be required to account with him for all the assets which they had received, as liquidating partners of the late copartnership, including the sum of $4,636.61, specially mentioned in the award ; (2), that there might be an accounting and a distribution of the assets in the manner prescribed by said award, and (3), for general relief. William T. Biedler admitted the allegations of the bill, but the Messrs. Witz filed an answer in which they set up a number of objections to the enforcement of the award.

The Court below passed a decree referring the case to
one of its auditors and masters to state an account in ac-
cordance with the terms of the award.   From that decree
this appeal was taken by the Messrs. Witz.

Before considering the main reasons relied on by the ap-
pellants for setting aside the award, it may be well for us
to pass upon what might be termed the preliminary and
technical questions that have been urged in this Court.   It
is said that there is no jurisdiction in a Court of Equity in
this State to enforce an award.   The learned counsel for
the appellants did not rely for this contention upon any
decision in Maryland sustaining that position, but rather
upon the absence of all precedents in this State to justify a
Court of Equity intervening to enforce the specific perform-
ance of such an award.   If that be conceded, it is not con-
clusive against the right to do so when a proper case is
presented.   If we assume that this award is valid, we can
see no reason why a Court of Equity cannot require an ac-
counting and a distribution of the assets of the firm between
the partners on the terms established by it.   The defendants
were bound to account to the plaintiff, and the arbitrators
having determined the proportion of assets that each part-
ner was to receive, such accounting should be in accordance
with the award.   It is conceded in the answer of the appel-
lants that " an accounting under the the supervision of this
Court is necessary, in order to ascertain the respective
rights of copartners."   Whether the distribution be made
in the proportions fixed by the award, or otherwise, it is
evident that a Court of Equity must take charge of the
settlement to do full and substantial justice between all
partners, as they cannot agree among themselves.   It might
well be questioned whether this is, strictly speaking, a bill
for the enforcement of a specific performance of the award—
whether it is not simply a bill to settle the affairs of the
copartnership, using the award for the purpose of determin-
ing the proportions the partners are to receive, and such
other matters as it disposes of.   But there is no longer any

doubt about the right of a Court of Equity to exercise this power, when the thing ordered by the award to be done is such as a Court of Equity would specifically enforce, if it had been agreed upon by the parties themselves. *Morse on Arbitration*, 603 ; *Russell on Arbitration*, 563, and cases cited by them.

It is also contended that the award is void, because Mr. Conklin failed to sign his name on the agreement. It is true that there is a provision that " The said arbitrators shall write their name or names on this article of agreement, as evidence of accepting the same," but there is no doubt that Mr. Conklin was duly selected by the other two, and that in point of fact he did accept, with the knowledge and consent of the partners. He ought to have signed his name, but his omission to do so did not and could not possibly prejudice or injure the appellants. His signature was not the only evidence of his acceptance of the appointment, and to set aside an award for such an omission would be far more technical than is required or justified either by authority or reason. The testimony of Mr. Conklin shows that his failure to sign his name was entirely an oversight, and not because there was any question of his acceptance.

It is further alleged that the three arbitrators did not act together, and that it was in effect simply an award of the two who signed it, without their making a proper effort to have all three pass upon and agree to the matters submitted to them. The evidence shows that Messrs. Devries and Supplee had a number of meetings, during a period of time covering about two months, and heard considerable evidence and argument. Being unable to agree, they finally selected Mr. Conklin. After his appointment all three met at different times and the partners were requested to come before them. All except Mr. Isaac Witz appeared and were interrogated by, or at least in the presence of the three arbitrators. Mr. Levi Witz informed them it would not be necessary to have his brother present, as he could answer all questions for him. They were represented by the same counsel in the written

argument that was submitted on their behalf. The record discloses the fact that Messrs. Supplee and Conklin differed materially with Mr. Devries as to the settlement and this finally resulted in the announcement by Mr. Devries of his withdrawal. He thought the settlement should be made on a different theory from that adopted by the other two. He, having been called on behalf of the defendants, testified that Messrs. Supplee and Conklin told him they were ready to make the award, but he requested a postponement until the following Monday or Tuesday, to which they assented, and they again met at the time agreed upon. They still differed and he then told them he would withdraw from the arbitration and " did so." He further said that on that occasion " The gentlemen stated that they were prepared to make an award and I presume from the papers they had, that the award might have been made up, but I declined to look at them to see what they contained." Between the two meetings above spoken of, Mr. Devries had seen Mr. Witz and his counsel, and told them he had determined to withdraw, unless his associates would either continue to recognize the articles of partnership in the distribution of the assets, or submit to a rewriting of the books. The counsel for the Messrs. Witz told him he had a perfect right to withdraw. When the three met on the Monday or Tuesday previously spoken of, finding that his associates did not agree to either of the two propositions made by him, he carried out his determination, announced his intention to withdraw and did so. Mr. Supplee testified that " a meeting was held at the bank, of which Mr. Devries was president," and a full discussion entered into of all the points submitted to us. This was a prolonged meeting and the questions were viewed from every possible standpoint. Mr. Devries remarked at this meeting that " I have heard all I wish to hear of argument or further discussion or expert testimony, and a date was then fixed for a final meeting, and it was agreed at that meeting a conclusion should be reached." The final meeting was held as above stated

and after some discussion Mr. Devries said, " Well, gentlemen, if this is your decision I withdraw from the arbitration." To this Mr. Supplee replied, " Mr. Devries, you cannot now withdraw from the arbitration after having staid in all this time, and we, by agreement, are now ready to vote." To this he answered, " But I do withdraw nevertheless ; but you gentlemen are perfectly competent to bring in your report without me in accordance with the articles submitted to us, as you are a majority of the board."

After that, as Mr. Conklin was going away, he and Mr. Supplee prepared and signed the award that is filed in the case, but at the request of the former the latter took it to Mr. Devries, who declined to sign it. The two arbitrators who constituted the majority were under no legal obligation to present the award to Mr. Devries, he having already withdrawn because he could not agree with the majority, and that act of courtesy of submitting it to him certainly cannot invalidate it. It was agreed in the submission " that the majority decision shall be the unanimous decision," and hence, two had the power to make the award if the three could not agree, and no one of them could defeat it by his withdrawal. All the testimony that the majority deemed relevant and proper was fairly and fully considered by the three and the award cannot be set aside because it was signed by the two, in the absence of the third, who had declined to act.

So far as the objection that the counsel for Messrs. Tregallas and Biedler was on one occasion called before Messrs. Devries and Supplee, a sufficient answer might be that it occurred before Mr. Conklin had been appointed. But it would be carrying technicalities to an extreme to say that this would have invalidated the award if he had appeared before the three in the absence of the other counsel without at least showing that some injury was or might have been done. Mr. Arnold was present as an accountant to sustain the claim of the Messrs. Witz, and Mr. Supplee suggested that it might be well to have Mr. Rose, counsel for

Messrs. Tregallas and Biedler, present, so he could explain some matters that Mr. Arnold did not seem to be able to explain to the satisfaction of the arbitrators. To this Mr. Devries consented and we see nothing in that act of the arbitrators that would justify us in setting aside the award.

This brings us to the consideration of the questions whether the arbitrators exceeded their powers by passing on matters not submitted to them, or failed to consider all matters that were so submitted. The articles of submission begin, " desiring to reach a speedy, equitable and just settlement of our partnership differences, we  *  *  *  * members of the late firm of Witz, Biedler and Company, agree to submit said differences to arbitration; further agree to submit all books, papers, documents pertaining to the business of said Witz, Biedler and Company, to the use of the said arbitration." What these differences were are not disclosed on the face of the agreement, and we must therefore resort to extrinsic evidence to ascertain them. The large preponderance of testimony shows that the differences existing were those passed on by the arbitrators in the award, but if there could be any question about that it would seem to be conclusively settled by the written arguments submitted by the counsel for the respective parties. That of the counsel for the appellants was largely taken up in his effort to sustain the contention of his clients as to the proportions in which the assets should be distributed; whilst Messrs. Biedler and Tregallas contended for another principle which was adopted by the arbitrators. He then discussed the Bridener defalcation before the dissolution, and under a separate head the defalcation during the liquidation, and concluded by giving his views in brief as to the expenses of the liquidation. Thus we see that the questions passed on by the arbitrators were those argued before them. There is nothing on the face of the award to suggest that any matters were passed upon which had not been submitted, unless, possibly, that as to the Bridener defalcation after the dissolution of the

firm. But when we understand what that was, and find that it was argued before the arbitrators by the representatives of all the parties, we can see no reason why the arbitrators could not properly pass upon it in the settlement of the partnership differences. It was contended by the appellee that the liquidating partners had been negligent as to this fund, and that inasmuch as they mingled it with the money of the new firm (of which Mr. Tregallas was not a member) to which Bridener had access, they were responsible. It was a question which properly arose in connection with the distribution of the assets of the late firm, having been received by the defendants as part thereof. We, therefore, cannot say it was not included in the submission.

We have not been able to discover from the evidence wherein the arbitrators failed to pass upon any question which had been submitted to them. It is true that there were some matters of detail as to the distribution, etc., argued before them, which are not mentioned in the award, but they are necessarily embraced in what was determined. In reaching a conclusion as to what proportions of the assets the former partners were respectively entitled to, the arbitrators presumably took into consideration all the evidence submitted to them and the theories presented by respective parties, including the questions as to how far the course of dealing between the partners changed the terms of the articles of partnership in reference to interest on the capital invested, the accounts of the partners with the firm, and other relevant matters. The burden of proof is on the appellants to show that the award is not coextensive with the submission (*Morse on Arbitration,* 363), and they have utterly failed to satisfy us of this or that the arbitrators exceeded their powers.

Then again it is contended that the award is not certain and final and that an account should have been taken and the sum due by each partner ascertained. The differences between the partners that were to be arbitrated were not as to the amounts received by them or what the assets of the

firm were, but as to the proportions they were respectively
entitled to receive. A considerable part of the assets of
the firm had not been collected. It was not possible to de-
termine definitely how much could be realized or when the
collections could be made. The liquidating partners were
still collecting when the arbitration was going on and even
after the award was made. It was therefore impossible to
name in dollars and cents the amount each partner was en-
titled to and the only method that could be adopted was to
determine the proportion of assets that each partner was to
receive, as was done by the award. This being done the
rest is simply an arithmetical calculation which did not re-
quire arbitrators to make and which they were not asked to
do. "If the arbitrator give the rule for calculating the
amount of money to be paid, without stating the results of
such calculations, the award is sufficiently certain according
to the general rule " *id certum est quod certum reddi potest.*"
*Russell on Arbitration,* 297 ; *Morse on Arbitration,* 422 ;
*Strong* v. *Strong,* 9 Cush. 566. And what we have said in
reference to the receipts is applicable to the losses charged
off or to be charged off and to the expenses of liquidation.
The proportions being established, the rest is simply and
wholly ministerial, not calling for the exercise of any judg-
ment on the part of the arbitrators. If under the circum-
stances they had attempted to name the sum due to or by
each partner, the award might possibly have been liable
to impeachment as being beyond the submission.

It was also contended that the arbitrators were mistaken
both as to the law and the facts. There is nothing on
the face of the award to indicate that any mistake of law
was made, as there should be to avoid an award on that
ground. *Goldsmith* v. *Tilly,* 1 H. & J. 361 ; *Hewit* v.
*State,* 6 H. & J. 95 ; *State* v. *Williams,* 9 Gill, 172. But
it was conceded before the arbitrators that the business of
the firm had not been conducted according to the articles
of copartnership, and the counsel for all the parties con-
tended that the departure from the terms of those articles,

with the knowledge and acquiescence of all the parties, had been such as to alter them as effectually as if such alteration had been agreed to in writing. As was said by the counsel for the appellants in his argument before the arbitrators, "such a practice of conducting business will not only be effectual to change or annul an express provision of the partnership agreement inconsistent with the custom, but will also be effectual to add new provisions to the agreement." The general principle contended for in that argument is undoubtedly correct, and if it were not, it is difficult to see how the appellants can question it in this proceeding, as they and all the other parties undoubtedly submitted that question of law to the arbitrators, and hence their decision was final, there being no error of law apparent on the face of the award. 1 *Am. and Eng. Ency. of Law*, 675, 676; *Morse on Arbitration*, 293, 304. It is evident that there had been modifications of the articles of partnership and the arbitrators were called on to determine what they were.

It is well settled in this State, as well as elsewhere, that the decisions of arbitrators on questions of fact are generally final and conclusive when there is no imputation on their conduct. *Cromwell* v. *Owens*, 6 H. & J. 10; *State* v. *Stewart*, 12 G. & J. 456; *Ebert* v. *Ebert*, 5 Md. 353; *Morse on Arbitration*, 316. Courts of Equity may sometimes grant relief for palpable errors in awards, such as an apparent mistake in calculation or something of that kind, but where the facts that have been submitted are such as may be determined differently by fair-minded and honest people, the conclusions of those selected for the purpose are final, and not subject to review by some other tribunal. The fact that the accountants produced by the appellants may think the arbitrators erred, does not authorize us to interfere with the award. The parties selected the arbitrators, not the accountants, to pass on these questions, about which the partners themselves, as well as accountants, differed. It was said in 5th Md. 359, "a more liberal and reasonable interpretation is now adopted by the Courts than formerly

existed as to awards. Every reasonable intendment will be made in their favor, and a construction given to them that will support them, if possible, without violating the rules adopted for the construction of instruments. It will be intended that the arbitrators have not *exceeded* their powers; that *all* matters have been decided by the arbitrators, unless the contrary shall appear on the face of the award; that it is certain, final and legal." Applying those principles to this case, we have no hesitancy in sustaining this award, and must confirm the decree of the Court below.

*Decree affirmed and cause remanded,*
*with costs to the appellee.*

(Decided Jannary 9th, 1896.)