[Civ. No. 25576.   Second Dist., Div. One.   Nov. 1, 1961.]

HARRY O. TURNER et al., Respondents, v. JOHN R. COX, Appellant.

Charles H. Lynch for Appellant.

Neil D. Heily for Respondents.

LILLIE, J.—Plaintiffs Turner, and Cox, a contractor, entered into a written agreement wherein Cox agreed to construct a house for the Turners; it also provided for arbitration of all disputes and grievances arising from the contract. A controversy arose relative to faulty construction; thus, on June 1, three arbitrators were selected—Mr. Drinkward, by the Turners; Mr. Bugay, by Cox, and Mr. Wills, by Bugay and Drinkward. After several inspections of the premises and various meetings at which all arbitrators were present, an award was made in favor of the Turners at a meeting on July 21. Concurrent with a motion to confirm the award, Cox moved the Superior Court for an order vacating the same; considerable testimony was taken; the trial court denied the motion to vacate and confirmed the award giving judgment for the Turners. Cox appeals.

The arbitration portion of the written agreement providing that "if there be three (arbitrators) the decision of any two of shall be binding" (par. 15), is here controlling (*Crofoot* v. *Blair Holdings Corp.*, 119 Cal.App.2d 156 [260 P.2d 156]); however, under section 1286, Code of Civil Procedure, "all the arbitrators shall sit at the hearing of the case, unless, by consent in writing, all parties shall agree to pro-

ceed with the hearing with a less number." Appellant complains that at the last meeting (July 21) resulting in the award, only two arbitrators were present; moreover, they acted without a report of one Mendez for which the arbitrators agreed to wait.

The arbitrator absent at the July 21 meeting was Mr. Bugay. Inasmuch as he is a practicing attorney and in addition to being Cox's arbitrator was then also his counsel, we are at a loss to understand his apparent indifference to the last meeting of the arbitrators unless he then believed, what appears to be the fact, that the meeting was not "a hearing of the case" and was not called for that purpose, a hearing at that time was never intended (the evidence having already been taken and discussed and findings and reports having previously been made by two of the arbitrators), and the meeting was called for the sole purpose of making the award, which Bugay knew would be adverse to his client.

The Turners, disturbed by the delay since June 1, asked their counsel, Mr. Butcher, to have the arbitrators meet and decide the matter "one way or the other"; thus he prepared a notice of meeting for this purpose for July 23; on July 18 each of the three arbitrators, including Bugay was served. Thereafter, Butcher contacted Bugay, told him about the findings and reports of the two other arbitrators and asked him if he would be present on July 23d; Bugay told him he could not be there and requested him to advance the meeting to a date convenient to him (Bugay); thus, Butcher said to him, "Well, you name a time," Bugay mentioned July 21, and he and Butcher entered into a stipulation advancing the date from July 23 to the evening of July 21. This was done solely at the request of, and as an accommodation to, Bugay. Pursuant thereto Butcher prepared a new notice of meeting for July 21; when it was served on Bugay he accepted service in writing and said he would be present. However, around 4 or 4:30 p.m. on July 21, Bugay called Butcher's office, in the latter's absence, and without giving any reason therefor simply told Butcher's secretary he would not be at the meeting that evening, and wanted Butcher to call him "if she could arrange it." Bugay neither asked for nor mentioned any continuance or postponement, nor did he inquire if the meeting would take place in his absence. Butcher did not return to his office until shortly before the scheduled meeting, and the first he knew of Bugay's call or that he would not be present, was at 7:30 p.m., when he read the memo relative to

the call his secretary had left on his desk. Drinkward and Wills arrived at the meeting; Bugay did not appear, nor did his client, Cox. Twenty or thirty minutes later, Wills and Drinkward signed the award. During the entire meeting, until 9:30 or 10 p.m. Bugay was in his own office; however, even knowing where they would be, he then made no attempt to call Butcher, Wills or Drinkward. Bugay made no effort to determine if the meeting would be, or had been, continued and whether the two arbitrators had proceeded without him.

As to what transpired during the meeting of July 21, it is apparent that no "hearing of the case" was held; at that time all that remained was the making of the award and it was for that purpose alone the meeting was called; and that was precisely what was done.

The arbitrators had been appointed on June 1; thereafter they held various meetings, some of which were at the Turner home and constituted an inspection of the premises for the defects; all three arbitrators were present, discussed all points of contention and talked to the parties. Bugay, acting in the dual capacity of Cox's arbitrator and his counsel, was at all of these meetings. Ten days prior to July 21 he saw a list of the defects prepared by the Turners' counsel, also that made by Drinkward; and around July 1, saw photographs of defects under the house (Exhibits 12A-H). He made two inspection trips and investigated the premises with the other arbitrators; he knew of the porch beam defects and that the "floor had been jacked up," and agreed during the meetings to a number of other defects. Cox, his client, was consulted and the arbitrators throughout talked to him; however, neither Cox nor Bugay offered evidence except that regarding items of cost which they agreed upon. After all hearings had been concluded Drinkward and Wills each prepared a report of his findings. Wills prepared his report about July 15; thereafter, he saw the report of the building inspector (Mr. Hill) and confirmed his findings as being in line with Hill's report. No dissenting report was ever prepared by Bugay; Bugay had full knowledge of the reports of Drinkward and Wills prior to July 21, and had received a copy of Wills' report the day before. Cox talked to Wills regarding the report before July 21, and was familiar with the list of structural defects contained therein.

The record is clear that at the hearings held at various times from June 1 to July 21, all evidence necessary to the award had been taken and discussed by the arbitrators, inspections

of the premises and investigations of the defects had been made, data prepared by others had been examined, both parties had been consulted, and all contentions on both sides had been studied; and two of the three arbitrators had made reports of their findings. All that remained on July 21 was the making of the final award, for which purpose the meeting at that time was called; no party or his counsel was present during the meeting. It is apparent that no "hearing of the case" was then held; in fact, appellant concedes that the award was made at the July 21 meeting "without taking evidence." (A.O.B., p. 4.)

Section 1286, Code of Civil Procedure, only requires all arbitrators to sit at "the hearing of the case"; even appellant's citation of 49 A.L.R.2d 905 (not here applicable in that it applies to vacancies by death or resignation) refers to vacancies occurring "before all of the evidence has been heard and they [arbitrators] have had an opportunity to discuss the issues among themselves." In the light of the evidence we do not construe the July 21 meeting as having been a "hearing" in the sense contemplated by the statute (*Downer Corp.* v. *Union Paving Co.*, 146 Cal.App.2d 708 [304 P.2d 756]), but only a meeting to set up a final award. In the *Downer* case, *supra,* all evidence was in, hearings had been held and findings had been prepared; a meeting was called to make the final award. One arbitrator advised the time was unsatisfactory and he had no opportunity to review the evidence, the findings and proposed award; and failed to appear. The award was made and signed by two arbitrators in the absence of the third. The court held that the meeting did not constitute a "hearing" under the statute (§1288, subd. (c)), but only a meeting to execute a formal award.

Our attention has been called to other portions of 49 A.L.R.2d 905 (originally cited by appellant), page 909: "It appears to be well settled that where an arbitration agreement provides that the decision of the issue may be made by a majority of a board of arbitrators, and one of the arbitrators resigns or withdraws after all the arbitrators have heard the evidence and the claims of the parties, and have had an opportunity to discuss the issues among themselves, the remaining arbitrators are authorized to render an award . . .," this on the theory that while there must be unanimous participation by the arbitrators in their consultations and deliberations, an absence occurring thereafter amounts, for all practical pur-

poses, to a dissent by the absent member and does not terminate the authority of the remaining members of the board to make a majority award. (P. 910.) While Bugay's absence could not be construed as a resignation or withdrawal, under the circumstances his failure to attend the last meeting should be considered no more than a dissent by him. See out-of-state cases—*American Eagle Fire Ins. Co.* v. *New Jersey Ins. Co.*, 240 N.Y. 398 [148 N.E. 562], in which an arbitrator resigned the evening before the award was made by the two remaining arbitrators, and the court held the award to be valid because his withdrawal, after hearing all of the evidence, was equivalent to no more than a dissent; and *Witz* v. *Tregallas*, 82 Md. 351 [33 A. 718], wherein the court stated, "All the testimony that the majority deemed relevant and proper was fairly and fully considered by the three and the award cannot be set aside because it was signed by two, in the absence of the third, who had declined to act." In line with the foregoing, under the circumstances of this case, where three arbitrators had already considered all of the evidence, findings were made by two and they were at the point of making the final award, we do not believe that the third arbitrator who declined to participate, can by his absence defeat the validity of the award and end the authority of the other two to act.

However the meeting of July 21 may be construed, the record shows no prejudice to Cox by reason of Bugay's absence and failure to participate in making the award. The trial court's denial of his motion to vacate the award recited "that it is not shown that any departure from the procedures required by section 1286 of the Code of Civil Procedure resulted in any prejudice to John R. Cox. In other words, no showing was made that a strict compliance with the provisions of section 1286 and attendance of all three arbitrators in the meeting when the award was made or at a later meeting would have resulted in any different award than the one that was made. The evidence did not show that the award was procured by corruption, fraud or undue means or that the arbitrators were guilty of misconduct in refusing to postpone the hearing, at which said award was agreed upon, nor did the evidence show any failure to hear or receive material evidence to the prejudice of John R. Cox, or did the arbitrators exceed their powers."

Arbitration proceedings by agreement of the parties are highly favored to encourage persons to avoid delay by obtaining adjustment of their differences in a forum of their

own choosing. ██ ██ Thus as a general rule an appellate court will not disturb findings made by a trial court in support of its order confirming an award (*Griffith Co.* v. *San Diego College for Women,* 45 Cal.2d. 501 [289 P.2d 476, 47 A.L.R.2d 1349]), and is bound by the lower court's determination of the credibility of witnesses and the weight of the evidence; and a decision of a question of fact, whether it be from oral or documentary evidence, is conclusive. ██ Nor are the merits of the controversy between the parties subject to judicial review; and since it is not incumbent upon an arbitrator to make findings of fact, explain his award or give reasons therefor (*Case* v. *Alperson,* 181 Cal.App.2d 757 [5 Cal. Rptr. 635]; *Ulene* v. *Murray Millman of Calif., Inc.,* 175 Cal.App.2d 655 [346 P.2d 494]), this court will presume " '[t]hat all matters within . . . a submission to arbitrate were laid before the arbitrators and passed upon by them.' " (*Crofoot* v. *Blair Holdings Corp.,* 119 Cal.App.2d 156, 192 [260 P.2d 156]; *Case* v. *Alperson,* 181 Cal.App.2d 757 [5 Cal. Rptr. 635]; Code Civ. Proc., § 1963, subd. 18.) ██ ██ Every reasonable intendment will be indulged to give effect to arbitration proceedings (*Case* v. *Alperson,* 181 Cal.App.2d 757 [5 Cal.Rptr. 635]; *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board,* 52 Cal.2d 568 [343 P.2d 23]), thus, for the claimed departure from the usual procedure to amount to misconduct of the arbitrators sufficient to vacate the award, it must be shown that it prejudiced the rights of one of the parties (Code Civ. Proc., § 1288, subd. (c); *Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.,* 29 Cal.2d 228 [174 P.2d 441].) ██ The burden is on the party complaining to affirmatively show error was committed by the arbitrators (*Blair* v. *Wallace,* 21 Cal. 317, 321; *United Farmers Assn.* v. *Klein,* 41 Cal.App.2d 766, 769 [107 P.2d 631]; *Carsley* v. *Lindsay,* 14 Cal. 390, 394; *Popcorn Equipment Co.* v. *Page,* 92 Cal.App.2d 448 [207 P.2d 647]; *Griffith Co.* v. *San Diego College for Women,* 45 Cal.2d 451 [289 P.2d 476, 47 A.L.R.2d 1349]; *Crofoot* v. *Blair Holdings Corp.,* 119 Cal.App.2d 156 [260 P.2d 156]) and an award will not be vacated for any error that does not prejudice his rights. (*Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.,* 29 Cal.2d 228 [174 P.2d 441]; *Case* v. *Alperson,* 181 Cal.App.2d 757 [5 Cal.Rptr. 635]; *Goossen* v. *Adair,* 185 Cal.App.2d 810 [8 Cal.Rptr. 855].)

██ Appellant has not established prejudice resulting to him by reason of Bugay's absence from the July 21 meet-

ing; nor has he shown that he did not receive a fair hearing on the arbitration matter or that the award would have been any different had Bugay been present. Neither Cox nor Bugay made any request to present additional evidence, and neither to the arbitrators nor to the lower court did they indicate they were possessed of anything in refutation, explanation or defense of the Turners' claims. (*Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.*, 29 Cal.2d 228 [174 P.2d 441].)

Appellant argues somewhat obscurely that the "hearing" by less than all of the arbitrators and the making of the award without awaiting Mendez' report, was in excess of their powers and such an imperfect execution of their powers that a mutual, final and definite award was not made; thus, under section 1288, subd. (d), Code of Civil Procedure, it is not necessary for him to show prejudice. Reciting that the Turners are entitled to damages in a sum certain from Cox by reason of his failure to perform his contract, a fixed fee for each arbitrator, and a sum for attorneys' fees, the award on its face is final and definite (*Ulene* v. *Murray Millman of Calif., Inc.*, 175 Cal.App.2d 655 [346 P.2d 494]; *Popcorn Equipment Co.* v. *Page*, 92 Cal.App.2d 448 [207 P.2d 647]) within the meaning of section 1288, subd. (d), certain and decisive as to the matters submitted, and clear and precise, giving the result of the accounts between the parties without detailing the process by which the result was reached, as to avoid further litigation. That only two arbitrators participated in the award and they did so without considering Mendez' report do not make it any less mutual, final or definite.

Nor is there merit to appellant's claim that the two arbitrators erred in making an award after the parties agreed to await a report by an independent investigator. Factually, the record does not support any such an agreement. He contends that at a meeting on July 7, at which all parties and their attorneys were present, (Bugay made it clear that although Drinkward was present Wills was not and that "no meeting" of the arbitrators was held.) Mr. McKaig, who then represented the Turners, and Mr. Bugay, attorney for Cox, agreed that a report from a qualified engineer be obtained to determine the extent of certain defects; and that pursuant to such agreement one Mendez made an investigation and report. Appellant's version of the purported agreement is predicated entirely on the testimony of Mr. Bugay; even so it

fails to show any understanding among the *arbitrators* to await Mendez' report before making an award.

But the court, apparently in accord with the testimony of other witnesses, impliedly found the existence of no such agreement to hire Mendez on behalf of both parties and no such understanding among the arbitrators. Mr. Wills testified that at no time was the determination of the award dependent upon any report of Mendez, and he was "very sure" the arbitrators did not agree to await any such report. Turner testified that never at any time was it agreed between him and anyone else that Mendez would make an investigation and report, or that the award would be withheld until such report had been made; that Cox thought he should hire Mendez on his own but that he (Turner) did not know whether Cox did so. Turner, by affidavit, stated that neither Drinkward, Wills, Turner nor Mrs. Turner agreed to the employment of Mendez and that there was no understanding or agreement that the arbitrators await any report before making their decision. This would seem to be the reasonable account of what occurred for had such an agreement or understanding existed it seems more than likely that Mr. Bugay would have protested at the time that the July 21 meeting was premature because such a report had not been submitted. He neither did so nor attended the meeting.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied November 21, 1961.