[Civ. No. 37496. First Dist., Div. Two. Dec. 29, 1976.]

DAVEY TREE SURGERY COMPANY, Plaintiff and Appellant, v. INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 1245, Defendant and Respondent.

## COUNSEL

Littler, Mendelson, Fastiff & Tichy and Robert F. Millman for Plaintiff and Appellant.

Neyhart, Anderson & Freitas, Peter Nussbaum and John L. Anderson for Defendant and Respondent.

## OPINION

**BRAY, J.\***—Plaintiff and appellant Davey Tree Surgery Company (hereinafter Company) appeals from a judgment of the San Francisco Superior Court denying its petition to vacate the arbitrator's award and granting the cross-petition of defendant and respondent International Brotherhood of Electrical Workers, Local 1245 (hereinafter Union) confirming the arbitration award.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## Issue Presented

An arbitration award is valid even though the board members did not meet after taking evidence.

## Record

An arbitrators' award was issued in favor of the Union. Thereafter, the Company filed a petition in the San Francisco Superior Court to vacate the arbitration award and order a rehearing. The petition is based on the ground that Gerald D. Marcus, the chairman of the arbitration board exceeded his powers under the express terms of the agreement between the Union and the Company in issuing the opinion and award and that said award cannot be corrected without affecting the merits of the decision on the controversy. The Union filed a petition to confirm the arbitration award. After a hearing, the trial court confirmed the arbitration award. The Company appealed.

## Statement of the Case

On January 4, 1971, the Company and the Union entered into a written agreement "to facilitate the peaceful adjustment of differences that may from time to time arise between them," which provides for a grievance procedure that includes arbitration. The Company is engaged in the tree trimming business in California, Arizona and Nevada. The trimming is done by crews of two or three employees with one employee acting as the working foreman. When at times, due to absenteeism or equipment malfunction, a crew is unable to work on its own, the Company will reassign the employees of that crew to other crews. When the working foreman of one crew is reassigned to another crew which already has a working foreman, the reassigned working foreman performs climber's duties.

Dennis Dewart was hired by the Company on March 4, 1970, and as of April 17, 1972, was working as a foreman and was earning the rate of pay provided for a foreman in the agreement between the Company and Union. On April 16 and 17, 1973, the truck for Dewart's crew was out of operation and he was reassigned to a different crew headed by its own foreman. Dewart performed climber's duties and was paid at the climber's rate of pay. On May 22, 1973, the Union filed a grievance on behalf of Dewart, asking that the Company pay Dewart at the working

foreman's rate for April 16 and 17, 1973. The Company refused to pay Dewart working foreman's wages for the two days in question.

In accordance with article XV of the written agreement between the Company and Union, the grievance was submitted to a three-member arbitration board consisting of William K. Nata, who represented the Union, Stephen Lyons, who represented the Company, and Gerald D. Marcus, who was selected by the other two members to act as the chairman. Hearings were held on February 28, 1974, and July 9, 1974. Thereafter, on September 24, 1974, the parties filed simultaneous briefs. The Company also filed a reply brief. Marcus, upon receipt of the reply brief, wrote the attorneys for the Company and for the Union on October 3, 1974. In this letter Marcus stated he was allowing the Union until October 15, 1974, to file a reply brief. Marcus concluded the letter by stating: "Having considered the matter submitted as of September 23, 1974, I have been working to have my Opinion and Award prepared and out by today since, as you know, I leave on vacation tomorrow. I trust the parties will understand why there will now be further delay since of course I will take advantage of your added contributions before submitting my Opinion."

On October 22, 1974, Marcus mailed three copies of the proposed opinion and award in favor of the Union to Lyons. In the cover letter Marcus asked Lyons to indicate his concurrence or dissent and then to sign the proposed opinion and award and to forward it to Nata. In a letter dated October 30, 1974, Lyons wrote to Marcus and expressed his "surprise, dismay, and outrage" that Marcus would "unilaterally decide this case" without meeting with the other two arbitrators to consider the evidence that had been presented at the hearing. In this letter Lyons made the following demands on behalf of the company: "1. That you withdraw the purported Opinion and Award in this case as it has been prematurely and unilaterally decided by you in violation of your authority and the Collective Bargaining Agreement.

"2. That you disqualify yourself as the arbitrator involved in this matter and declare your participation a nullity.

"3. That you reimburse the Company for all its costs and legal expenses as the arbitration matter must be declared a nullity and the parties must resubmit this case to another arbitrator who is willing to abide by the arbitration agreement and not exceed his authority."

On November 4, 1974, Marcus replied by letter to Lyons stating the following: It is the normal practice, where the collective bargaining agreement provides for an arbitration board, for the chairman to prepare a proposed opinion and award and submit it to the "other two members for approval, disapproval or any other comment that may be appropriate." The opinion and award he sent was not a " 'final' " award, since it needed the concurrence of at least one other member of the board in order to achieve that status. Neither the collective bargaining agreement nor federal or state law required a meeting of the board after the matter had been submitted and before the proposed opinion was rendered. It has been his practice to hold such a meeting when requested, but no member requested such a meeting in this case.

Marcus further stated in his November 4 letter: "I have most carefully considered the evidence and argument and assume that each member of the Board will do the same. The purpose of sending the proposed Opinion and Award to you was precisely to facilitate such a consideration of the evidence and arguments of the parties." Marcus gave Lyons until November 11 to concur in the opinion and award or to prepare a dissent.

On November 11, 1974, Wesley Fastiff, attorney for the Company, wrote Marcus and informed him that both the agreement and California law required the arbitration board to meet and consider the evidence and the Company would take all necessary steps to protect its legal position. Fastiff also urged Marcus to withdraw the opinion and award so the matter could be submitted to another arbitration board.

On November 14, 1974, Marcus replied by letter to Fastiff and disagreed with Fastiff's interpretation of the law and encouraged Fastiff to pursue whatever action he deemed appropriate for the Company. On November 21, 1974, Marcus sent a copy of the opinion and award to the parties signed by Marcus and Nata.

*An arbitration award is valid even though the arbitration board members did not meet after taking evidence.*

The agreement between the Company and Union provides: "The [arbitration] Board shall hold such hearings and shall consider such evidence as to it appears necessary and proper." The Company's position can be simply stated: An opinion that is issued before all three members

of an arbitration board have met and considered the evidence presented is void. The Company argues that the above provision of the agreement requires all three arbitrators to meet and consider the evidence after a hearing has been held. The Company states that the procedure followed by Marcus resulted in the grievance being decided by one arbitrator when the agreement calls for a three-member panel to consider the evidence.

The Company relies heavily upon the New York trial court decision in *Simons* v. *New Syndicate* (1956) 152 N.Y.S.2d 236. In *Simons* the union moved to vacate an arbitration award on the ground that the arbitrators exceeded their powers in that an award was made by the impartial chairman and two arbitrators chosen by the company and without consulting the two arbitrators chosen by the union. (*Id.* at pp. 237-238.) The court noted that the impartial arbitrator sent the proposed opinion to the company arbitrators who signed it before the union members knew of its contents. The court stated: "An arbitration is a quasi-judicial proceeding. It should be fair and impartial. All the arbitrators should be notified to meet for deliberation so that full consultation may be had. All should meet and hear the proofs, but the report of a majority is valid unless the minority has been excluded from the deliberations without fault on its part." (*Id.* at pp. 238-239.) The court held that the union arbitrators were excluded from the deliberations by the procedure used by the impartial arbitrator and the company arbitrators. (*Id.* at p. 239.)

Even if a decision of a trial court of New York were regarded as binding authority on this court, the *Simons* decision is distinguishable from the case at bar. In the instant case the impartial arbitrator sent a copy of the proposed opinion to the Company and to the Union. Marcus asked the Company arbitrator to indicate his concurrence or dissent and then to send the proposed opinion to the Union arbitrator. The Company arbitrator was not excluded by this procedure. The Company arbitrator was to consider the opinion and to indicate his concurrence or dissent before the Union arbitrator had had such an opportunity. At the time the Company arbitrator was to consider the proposed opinion it had not been signed by a majority of the arbitrators and therefore was not binding. In fact, the procedure employed by Marcus was intended to be a method by which the evidence before the arbitrators could be fully considered.

Since the New York case is not helpful in resolving, let alone dispositive of the issue presented in the instant case, this court must apply the pertinent law in California. Section 1286.2 of the Code of Civil Procedure provides that a court shall vacate an arbitration award if it determines that: "(a) The award was procured by corruption, fraud or other undue means;

"(b) There was corruption in any of the arbitrators;

"(c) The rights of such party were substantially prejudiced by misconduct of a neutral arbitrator;

"(d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or

"(e) The rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."

The Company asserts that the arbitration award should have been vacated under subdivision (d) of section 1286.2 because Marcus exceeded his powers when he wrote a proposed opinion and award without meeting with the other two arbitrators to consider the evidence. ■ The Company relies on the well established principle that the powers of an arbitrator are only those given by the agreement which provides for the arbitration procedure. (*O'Malley* v. *Petroleum Maintenance Co.* (1957) 48 Cal.2d 107, 110 [308 P.2d 9]; *San Luis Obispo Bay Properties, Inc.* v. *Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556, 564 [104 Cal.Rptr. 733].)

In *Turner* v. *Cox* (1961) 196 Cal.App.2d 596 [16 Cal.Rptr. 644], the court considered the effect of former section 1286 of the Code of Civil Procedure which provided "all the arbitrators shall sit at the hearing of the case, unless, by consent in writing, all parties shall agree to proceed with the hearing with a less number." In *Turner* one of the arbitrators was absent from a meeting that was called for the purpose of making the award. The evidence had already been heard by all of the arbitrators. The court stated since all the evidence had been heard by the arbitrator,

the meeting that was called to make an award was not a " 'hearing of the case' " and the procedure followed by the arbitrators in making the award was not in violation of the code section. (*Id.* at pp. 600-601.) The court held since the arbitration portion of the written agreement provided that " 'if there be three (arbitrators) the decision of any two of shall be binding' " (p. 598) that the lower court was correct in not vacating the arbitration award.

■ In the instant case the agreement between the parties also provides that the "decision of a majority of the members of the [arbitration] Board shall be final and binding on Company and Union. . . ." Therefore, the requirement that the "Board . . . shall consider such evidence as to it appears necessary and proper" means all three members must be present at a hearing where evidence is taken.[1] However, under the agreement a decision of a majority of arbitrators is binding. ■ The agreement does not state the method by which the arbitrators are to make a decision or an award after a hearing has been held to hear the evidence the board deems necessary and proper.

Even the book on arbitration pointed to by the Company notes there is no fixed approach in regard to the extent of consultation and discussion between the impartial arbitrator and the other members of the arbitration board following the arbitration hearing.

"The members of tripartite boards in many cases meet in executive session to discuss the case sometime after the hearing has been completed. There is no fixed approach to be taken by the neutral in conducting executive sessions. Rather, he is free to choose the course of procedure and to vary his approach in accordance with his evaluation of the parties, the circumstances of the case, and the time when the session is held.

"Customarily the impartial chairman of the board will inquire as to the wishes of the partisan members in regard to meeting in executive session. In some cases it will be specifically agreed that there will be no executive session and that the neutral will write the opinion and award with each party reserving the right to file a dissent. When this procedure is followed it also may be agreed that if the award prepared by the

---

[1]Under section 1282, subdivision (b), it appears that a majority of the arbitrators could hear the evidence "if reasonable notice of all proceedings has been given to all arbitrators."

neutral does not receive a majority vote, the board will then meet in executive session to discuss the case further. Another procedure is for the neutral to prepare a tentative opinion and award, the executive session then to be held to review the tentative decision.

"Often tripartite boards meet in executive session prior to the preparation of any proposed award. But while the session ordinarily gives the neutral a better insight into the dispute, only infrequently does it produce a unanimous decision. Often when the executive session fails to resolve the dispute, it will be understood that the neutral will prepare a proposed award without further conference or communication with the partisan members other than to submit the award to them for concurrence or dissent." (Elkouri & Elkouri, How Arbitration Works (3d ed. 1973) The Arbitration Tribunal, p. 85.)

The Elkouris then state that the neutral arbitrator of a tripartite board might not be compelled to meet in executive session with partisan members even though the latter members have not expressly waived such a session. (*Id.* at p. 86.)

This latter statement by the Elkouris is supported by the decision in *In re Duluth, Missabe and Iron Range Railway Co.* (D.C.Minn. 1954) 124 F.Supp. 923. In *In re Duluth,* the neutral arbitrator prepared a proposed opinion and delivered it to one of the other arbitrators who signed it. The union in *In re Duluth* moved to set aside the award because the three arbitrators never conferred or consulted together after the hearings where evidence was taken. The court stated that the "partisan members [of the tripartite board] will champion the position of their respective employers" (p. 928) and where all members of the board attended the arbitration hearing the court held that the failure of the neutral member to call the board together after his proposed findings had been submitted to them should, at most, "be considered as a mere irregularity and not sufficient to vitiate the action of the majority of the Board." (*Id.* at p. 929.)

In the instant case it would appear that Lyons should have had notice that Marcus was preparing the proposed opinion. Marcus so notified the lawyers for the Company on October 3, 1974. At this time Lyons could have requested a meeting of all of the arbitrators to discuss the award.[2]

---

[2]An inference might be drawn that the Company did not request an executive session at this point because it wanted to first see if the proposed opinion was or was not favorable to its position.

However, even if the knowledge of the Company is not imputed to the Company arbitrator, Lyons received a copy of the proposed opinion before it had been signed by Nata and still at this point could have requested a meeting. The authority cited by the Company, the Elkouris, states that a normal arbitration procedure is to hold an executive session after a proposed opinion is prepared. Since Lyons never requested a meeting to consider the proposed opinion, it might be said that the Company waived its right to any such executive session.

■ Every reasonable intendment will be indulged to give effect to arbitration proceedings. (*Sevey* v. *American Federation of State etc. Employees* (1975) 48 Cal.App.3d 64, 71 [121 Cal.Rptr. 341]; *Turner* v. *Cox, supra,* 196 Cal.App.2d 596, 603.) Therefore, an award will not be vacated for any error that does not prejudice the rights of the party complaining. (*United Brotherhood of Carpenters etc., Local 642* v. *DeMello* (1972) 22 Cal.App.3d 838, 840 [100 Cal.Rptr. 564].) ■ The Company has not shown that it did not receive a fair hearing on the arbitration matter or that the award would have been any different had an executive session been held. Evidence was heard and the matter was fully briefed by both sides.

Although the best practice would be to hold an executive session so that the partisan members may "attempt to ensure that the neutral chairman understands the position of the party they represent and their view as to the weight and significance of the evidence," the failure to hold such a session in the instant case does not constitute such an irregularity as to vitiate the award. (Fairweather, Practice and Procedure in Labor Arbitration (1973) Selection of the Arbitrator or the Board, p. 74.)

Judgment affirmed.

Taylor, P. J., and Rouse, J., concurred.