JOURNAL ENTRY AND OPINION,
Appellant Cleveland Police Patrolmen's Association (CPPA) appeals the trial court's grant of summary judgment in favor of appellee the City of Cleveland (city).
CPPA and the city entered into a collective bargaining agreement, effective April 1, 1995 through March 31, 1998, which contained a provision for binding arbitration in front of a panel of three arbitrators in the event of an impasse in negotiations. In their negotiations for a contract to begin in April of 1999, the parties reached an impasse on several issues. According to the terms of the contract, the arbitrators must choose one of the two parties' last best offer in resolution of each of the issues in dispute.
Only one of the issues being negotiated is the subject of this appeal: the union, while accepting the city's offer of a 10% raise over three years, additionally included in its last best offer a police service allowance of $500 per year, or $1,500 over the three-year life of the contract. The city rejected this offer and instead offered the 10% raise alone in the compensation negotiations. This difference left the arbitration panel to decide between those two options.
The contract between the parties established the method of choosing the arbitration panel. Each side chose one arbitrator, and a third arbitrator was selected by the strike-off method. CPPA selected Marvin Feldman and the city selected Frank Buck. The arbitrator chosen by strike-off was Elliott Goldstein. There is no dispute concerning the method used in selecting the arbitrators.
The arbitration panel heard the arguments and reviewed the evidence of the parties over the course of three non-consecutive days in November and December of 1998. By agreement of the parties, Goldstein obtained two extensions of time for releasing the panel's opinion and award.
A major part of the dispute in this case concerns the communications, or a lack thereof, between the arbitrators.[1] Both Goldstein and Buck testified at deposition that the panel agreed that Goldstein would draft the opinion and circulate it among the panel for discussion and correction, but Feldman stated he does not remember this agreement. Rather, Feldman argues that Goldstein made a unilateral decision, wrote and released a unilateral opinion, and refused to discuss the case prior to making his decision. Because Feldman believed that the arbitration process had broken down, he called for Goldstein's resignation and refused to participate further with [Goldstein] as the chairman of the panel. Correspondence from Feldman to Goldstein dated March 3, 1999. Buck testified, on the other hand, that he made minor suggestions to Goldstein concerning the opinion after Feldman refused to participate in executive session.
Goldstein and Buck signed and released an opinion and award accepting the city's final offer for the contract on March 12, 1999. Feldman did not sign the opinion. At his request, the panel included in the record his letters and faxes protesting the methods used by the panel. CPPA timely appealed to the common pleas court.
The common pleas court ordered both parties to file motions for summary judgment. The court granted the city's motion and denied CPPA's motion. CPPA again timely appealed to this court.
Appellant states two assignments of error. For its first assignment of error, appellant states
 I. THE TRIAL COURT ERRED IN FAILING TO VACATE THE ARBITRATION AWARD PURSUANT TO R.C. 2711.10(C) SINCE THE PANEL DID NOT COMPLY WITH THE MANDATES OF ARTICLE XXIII OF THE PARTIES [sic] COLLECTIVE BARGAINING AGREEMENT.
Appellant claims that Goldstein did not comply with the collective bargaining agreement when he forwarded his written opinion to the other two arbitrators before any discussion had taken place and thus unilaterally decided the case. CPPA also claims that the failure to meet prior to drafting an opinion violates the arbitration clause of the contract. Because CPPA views the process as having been conducted in violation of the contract, CPPA demands that the proceedings be declared a nullity and the issues be arbitrated anew.
The contract provision in question is Article XXIII, which provides the following procedure in the event of an impasse:
 (a) Each party shall appoint an arbitrator and those two (2) arbitrators shall agree on a third arbitrator within five (5) days, or they shall select a third impartial arbitrator by the strike-off method from a list of seven (7) furnished by the American Arbitration Association.
* * * *
 (d) After receiving whatever evidence the parties wish to submit, the arbitration panel shall select the final offer of one (1) of the parties on each of the impasse issues and shall issue an award incorporating all of these selected final offers, without modification.
 (e) In reaching its decision, the arbitration panel shall give weight to the following factors:
 (i) Past collective bargaining agreements, if any, between the parties;
 (ii) Comparison of the issues submitted to final offer settlement relative to the employees in the bargaining unit involved with those issues related to other public and private employees doing comparable work, giving consideration to factors peculiar to the area and classification involved;
 (iii) The interests and welfare of the public, the ability of the public employer to finance and administer the issues proposed, and the effect of the adjustments on the normal standard of public service,;
(iv) The lawful authority of the public employer;
(v) The stipulations of the parties;
 (vi) Such other factors, not confined to those listed in this section, which are normally or traditionally taken into consideration in the determination of the issues submitted to final offer settlement through voluntary collective bargaining, mediation, fact-finding, or other impasse resolution procedures in the public service or private employment.
As evidence to support its assertion, CPPA provides faxes Feldman sent to Goldstein requesting discussions on the issues. In a fax dated February 27, 1999, from Feldman to Goldstein, Feldman stated
 I suggest that an appropriate way to proceed in this matter would be for you to reduce the results of the factual record into a prepared statement of fact for full panel discussions. Only after such discussion can an appropriate proposed conclusion be reached. I think the factual analysis can be agreed to prior to result. Important to the integrity of the process is to discuss the facts prior to conclusion.
On March 3, 1999, Feldman sent a letter to Goldstein stating
 It is my understanding that you, without any consultation of the full arbitration panel at any time, have reached a decision in the interest arbitration matter involving the Cleveland Police Patrolmen's Association and the City of Cleveland, Ohio * * *. Your activity is clearly contrary to Article XXIII, Paragraph (d), of the collective bargaining agreement under which this matter arose.
 The clear and unambiguous language of the contract at the cited section states the following:
 (d) After receiving whatever evidence the parties wish to submit, the arbitration panel shall select the final offer of one (1) of the parties on each of the impasse issues and shall issue an award incorporating all of these selected final offers, without modification.
 Since Mr. Buck said to me that you are mailing an Opinion and Award on March 5, 1999, I must suggest to you that your writings will be held for naught by the CPPA. I suggest that you resign and that you withhold any writings, for all the reasons stated, so that the parties may obtain a final result pursuant to contract elsewhere.
 It might further be noted that the CPPA considers your activity an open and notorious and serious breach of the contract language bordering on unethical conduct.
 Under the circumstances, I will not be participating further with you as the chairman of the panel.
The record shows that Buck and Goldstein attempted to contact Feldman to schedule a meeting for the purpose of discussing the draft opinion, but Feldman refused to communicate with them.
Feldman is mistaken, both in his reading of the contract and in his belief that the actions of the panel were illegal. Although he testified in his deposition that the contract says the panel shall meet and decide, that's the clear and unambiguous language, the contract in question actually says,
 After receiving whatever evidence the parties wish to submit, the arbitration panel shall select the final offer of one (1) of the parties on each of the impasse issues and shall issue an award * * *.
The contract says nothing about a meeting or about the way the arbitrators should proceed following the hearing. We agree with the trial judge's analysis of the agreement:
 While the collective bargaining agreement lists factors the arbitrators must consider in their deliberations, it does not contain any other provisions prescribing the exact procedure for the decision-making process. For example, the collective bargaining agreement does not state: The arbitrators must confer with one another before reaching any preliminary decisions or drafting any opinions. Rather, paragraph (d) simply states that the arbitration panel shall select the final offer of one of the parties. As long as the arbitration panel selects the final offer, it does not matter if the tie breaking arbitrator drafts a proposed opinion before the final decision or not.
CPPA provides no evidence, moreover, that the approach used by Goldstein was not accepted practice. Feldman testified I've never seen such a botched up situation in my entire life in arbitration by an alleged experienced arbitrator, this is absolutely a travesty. (Feldman Tr. at 85). Both the other arbitrators stated, however, that it is accepted practice to circulate a draft opinion prior to meeting and discussion. In fact, both Goldstein and Buck testified that the three of them had discussed this was the method by which they planned to proceed, although Feldman testified that he did not remember this conversation.
Additionally, the case law supports the method used by Goldstein and Buck to make their decision. CPPA claimed that once Goldstein had made up his mind it was too late for a meeting. The arbitration award is not final, however, until it is formally announced and delivered to the parties * * *. Prior to that event, any of these three arbitrators could have changed his mind regardless of what he had already signed. Stroup v. Midwestern Indemnity(July 1, 1991), Stark App. No. CA-8266, unreported, 1991 Ohio App. LEXIS 3337, at *5.
As the trial judge observed in her very comprehensive opinion, in a case in which no meeting was even offered to the partisan arbitrators, one court refused to say that the arbitration was not valid. Citing Elkouri and Elkouri, How Arbitration Works (3rd ed. 1973), The Arbitration Tribunal, p. 85, the court noted that
 the neutral arbitrator of a tripartite board might not be compelled to meet in executive session with partisan members even though the latter members have not expressly waived such a session.
Davey Tree v. Electrical Workers (Dec. 29, 1976), 94 LRRM 2905, 2908,65 Cal.App.3d 440. As the Davey Tree court held, the failure to hold such a session * * * does not constitute such an irregularity as to vitiate the award. Id. at 2909.
Similarly, in another case in which the neutral failed to conduct a discussion with the other arbitrators, the court held that realistically considered, it must be recognized that such gesture would have accomplished nothing. This was a Board composed of two partisans and one neutral member. The court recognized that the two partisan members' votes were already decided and that the tie-breaker would be the neutral. Duluth Railway v. Railroad Trainmen (Sept. 30, 1954), 34 LRRM 2891, 2894. Again, this court held that the lack of a meeting between the arbitrators was a mere irregularity and not sufficient to vitiate the action of the majority of the Board. Id. at 2895. As the trial court reported the case law, [i]t is well-settled that when a multi-party arbitration panel is issuing an award, the neutral arbitrator may render a decision unilaterally, provided another panel member signs off on the decision.
In the case at bar, Goldstein tried to arrange a meeting or phone conference of the panel after he circulated his draft opinion but was prevented from doing so by Feldman's abdication. The panel's released opinion was signed and agreed to by two of the three arbitrators on the panel. The lack of the third panel member's signature in no way invalidates the decision of the panel. While the absence of his signature can signal the intensity of his disagreement and flag the court's attention, it cannot be allowed to invalidate the decision itself. Duluth at 2894, 2895. Appellant has failed to demonstrate that the trial court erred in deciding that the proceedings of the arbitration panel were properly conducted.
The first assignment of error is overruled.
For its second assignment of error, appellant states
 II. THE TRIAL COURT ERRED IN FAILING TO VACATE THE OPINION AND AWARD ISSUED BY ARBITRATOR GOLDSTEIN SINCE IT LACKS RATIONAL SUPPORT AND CANNOT BE RATIONALLY DERIVED FROM AGREEMENT IN VIOLATION OF SECTION 2711.10 OF THE OHIO REVISED CODE.
An arbitration award is presumed to be valid: it is the policy of the law to favor and encourage arbitration and every reasonable intendment will be indulged to give effect to such proceedings and to favor the regularity and integrity of the arbitrator's acts. Findlay City School District v. Findlay Education Ass'n (1990), 49 Ohio St.3d 129, 131, quoting Mahoning Bd. of Mental Retardation v. Mahoning Cy. TMR Edn. Assn. (1986), 22 Ohio St.3d 80, 84. The courts' deference to an arbitration decision is so great that even a grossly erroneous decision is binding in the absence of fraud. Goodyear Tire Rubber (1975),42 Ohio St.2d 516, 522. Appellant's burden of showing error, therefore, is a heavy one.
The Revised Code outlines the circumstances in which a court will vacate an arbitration award:
 In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:
 (A) The award was procured by corruption, fraud, or undue means.
 (B) There was evidence [sic] partiality or corruption on the part of the arbitrators, or upon any of them.
 (C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
 (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. (Emphasis added.)
R.C. 2711.10. Appellant claims that the arbitrators violated some or all of the italicized sections of the statute. First, it claims that the manner in which the panel reached its decision, as discussed in the first assignment of error, constituted misbehavior which prejudiced its rights. We have already found, however, the evidence does not support the allegation of impropriety on the part of the panel.
Appellant also argues that the panel violated section (D) by exceeding its powers or failing to make a mutual, final and definite award. They base this claim on the neutral's opinion in which he states that the CPPA members are the lowest paid patrolmen in the large cities in the state despite their significantly heavier workload and responsibility. The opinion also stated, however, that
 [a]lthough there is some indication at this point that a catch-up with the other major Ohio cities may be required in the future, the particular offer presented to this Panel when analyzed in light of the competing legitimate concerns and when the focus is on the reasonableness of that last best offer, ultimately must be rejected.
Opinion and Award at 46. The opinion and award addresses the concerns of both parties in great detail, analyzing the burdens and obligations of both sides. It acknowledges that the Cleveland patrolmen are underpaid, but it also points out that the attrition rate for the Cleveland Police Department is very low and that applicants always far outnumber positions available. The opinion further noted that awarding the police service allowance would put a severe strain on the city budget and would very likely cause the other unions in the city to demand an equivalent benefit.
The only way to give effect to the purposes of the arbitration system of conflict resolution is to give lasting effect to the decisions rendered by an arbitrator whenever that is possible. City of Hillsboro v. F.O.P. (1990), 52 Ohio St.3d 174, 176. If the award is determined to draw its essence from the collective bargaining agreement, then the reviewing court's inquiry, for purposes of vacating an arbitrator's award pursuant to R.C. 2711.10(D), is at an end. F.O.P. v. Cleveland (Apr. 9, 1998), Cuyahoga App. No. 72482, unreported, 1998 Ohio App. LEXIS 1508, at *6.
The collective bargaining agreement requires the panel to address the following issues in choosing which side's final best offer to enforce:
 (e) In reaching its decision, the arbitration panel shall give weight to the following factors:
 (i) Past collective bargaining agreements, if any, between the parties;
 (ii) Comparison of the issues submitted to final offer settlement relative to the employees in the bargaining unit involved with those issues related to other public and private employees doing comparable work, giving consideration to factors peculiar to the area and classification involved;
 (iii) The interests and welfare of the public, the ability of the public employer to finance and administer the issues proposed, and the effect of the adjustments on the normal standard of public service;
(iv) The lawful authority of the public employer;
(v) The stipulations of the parties;
 (vi) Such other factors, not confined to those listed in this section, which are normally or traditionally taken into consideration in the determination of the issues submitted to final offer settlement through voluntary collective bargaining, mediation, fact-finding, or other impasse resolution procedures in the public service or private employment.
Considering past collective bargaining agreements between the parties, the panel noted that the city has a history of keeping the agreements between the various unions at similar rates of increases, but also noted that at some point in time the patrolmen would need a proportionately larger increase to bring their wages in line with other police departments in the area and in the state. The panel did consider, therefore, the first two factors in its decision.
The panel also considered the ability of the public employer to finance and administer the proposed service allowance. After observing that implementing the union's proposal would seriously strain the city's financial resources, the panel then stated that it would give less weight to this particular factor than to others it was considering.
Although the panel's opinion focused on the second and third factors listed in the collective bargaining agreement, the panel touched on all of the factors listed. In rendering its decision, the panel drew its essence from [the] collective bargaining agreement * * *.No further inquiry into the substantive merits of the arbitrator's decision may be made by a reviewing court once the determination is made that the award draws its essence from the agreement and that the award is not unlawful. Findlay at 131.
Appellant has failed to demonstrate either that the arbitration decision is unlawful or that it is not based upon the collective bargaining agreement.
The second assignment of error is overruled.
The ruling of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J., CONCURS; TERRENCE O'DONNELL, J., DISSENTS (See Dissenting Opinion).
[1] The dissent's opinion grants credence to arbitrator Feldman's version of the facts while disregarding the version presented by the other two arbitrators. It is not for this court to weigh the evidence: absent an abuse of discretion, we must affirm the trial court.