[Civ. No. 8800.   Third Dist.   Dec. 11, 1956.]

DOWNER CORPORATION, Respondent, v. UNION
PAVING COMPANY (a Corporation), Appellant.

Henry C. Clausen and Richard G. Burns for Appellant.

Gordon J. Aulik for Respondent.

PEEK, J.—This is an appeal from an order confirming an award of arbitrators and from the judgment entered thereon.

On August 2, 1948, the parties entered into two written joint venture agreements, referred to as the Hagginwood and Contra Costa jobs, respectively. Each contract provided that respondent-appellant Union Paving Company, referred to herein as Union, would furnish the capital; that petitioner-respondent Downer Corporation, referred to herein as Downer, would furnish the machinery, equipment and labor necessary for the performance of two construction contracts which had been awarded to Downer; and that profits or losses would be borne equally by the parties. ▆▆▆ Both contracts were successful. The Hagginwood job showed a net profit of over $170,000 and the Contra Costa job netted more than $47,000 or an overall total net profit in excess of $217,000, all of which was represented by 6 per cent sanitary district bonds. The bonds from the Contra Costa job bore interest from January 1, 1950, and those from the Hagginwood job from May 1, 1950. On May 8, 1951, the bonds were delivered to Mr. Dowling, president of Union, who converted them to his own use and refused to remit any of the proceeds to Downer.

Downer placed the matter in the hands of its attorney, Mr. Macomber, who unsuccessfully carried on settlement negotiations for approximately six months with Mr. Dowling. Mr. Macomber then advised Union that Downer had appointed him its arbitrator pursuant to the provisions contained in the joint venture agreements ". . . to the end that the said arbitrators shall appoint a third and the said matter shall proceed to arbitration." Thereafter, by a telegram dated December 18, 1951, Mr. Clausen, attorney for Union, advised Mr. Macomber that he had been designated by that corporation as its arbitrator, but nearly three months elapsed before he was available for a meeting with Mr. Macomber. It then appeared that Mr. Clausen had not talked with Mr. Dowling and knew nothing concerning the matter. Also at that meeting Mr. Dowling stated that he was busy and did not know when he would get around to going over Downer's specifications of objections to the accounting of the joint ventures.

It is contended by Union that immediately following the

appointment of the two arbitrators the contemplated arbitration was abandoned in favor of the conduct of negotiations for the settlement by the lawyer-arbitrators on behalf of their respective clients. However, on March 13, 1952, Downer filed petitions seeking an order appointing a third arbitrator and directing arbitration under each contract. Union demurred and moved to strike on the grounds that the court had no jurisdiction; that the California arbitration statutes were not applicable; that there was another action pending; and that Downer had waived its right to arbitration. At the time of the hearing Union filed an answer and return in which it alleged that it had not failed to name an arbitrator nor that the one appointed had been unable to agree with Downer's arbitrator on the appointment of a third, and that Downer was not aggrieved by such failure. Additionally it was alleged that the arbitration clause in the contracts called for common law arbitration, and hence the court had no power to compel the same. Union further alleged that it had not refused to cooperate in naming a third, that the arbitrators could settle the matter between them without the necessity of a third, that in any event Downer had waived its right to arbitration, and concluded its answer with a demand for a jury trial. The contentions of Union were denied, and the court appointed Mr. Kenneth G. McGilvray, an attorney of Sacramento, to act as the third arbitrator.

Thereafter the arbitrators met, went over the evidence and chose Mr. McGilvray to prepare the proposed findings and award. Several hearings were had during the following year, and the matter was eventually submitted for decision on October 9, 1953. Mr. McGilvray completed his work on June 2, 1954, and shortly thereafter sent the transcripts and exhibits to Mr. Clausen with the suggestion that they meet with Mr. Macomber during the week of July 5 to make the final award. Mr. Clausen did not answer that communication. On July 7 Mr. McGilvray wrote to him and to Mr. Macomber setting a meeting at the latter's office in Stockton for July 14. On July 9 Mr. Clausen replied that such time was unsatisfactory; that he had had no opportunity to review the evidence and the proposed award; and that he was preparing for a jury trial and would suggest a meeting in his San Francisco office on August 17. He also noted in his letter that he would object to any meeting of the arbitrators unless all three were present. Thereafter, on July 12, Mr. McGilvray again addressed a letter to Mr. Clausen stating that in view

of the fact that the matter had been submitted on October 9, 1953, and that the proposed award together with all exhibits had been in Mr. Clausen's hands for more than a month, he proposed to meet with Mr. Macomber in his office on July 14 and sign the award. Mr. McGilvray and Mr. Macomber met on July 14, modified the award to a degree and signed the same as modified. On that same day Downer filed in the superior court of San Joaquin County a notice of motion for an order confirming the award. Union thereupon filed objections to the motion for an order confirming the award and moved for an order vacating the same and also moved for an order staying the proceedings to enforce the order. After a hearing at which evidence was introduced and briefs filed, the court denied both motions by Union and confirmed the award.

The first source of disagreement relates to the arbitration clause contained in each of the joint venture agreements, which is as follows:

*"If any question should arise concerning the interpretation of this Agreement or any matter arising therefrom,* said question or matter shall be left to the determination of a Board of Arbitrators. Each party shall appoint one arbitrator and these two shall appoint a third arbitrator. *The decision of any two arbitrators shall be binding upon both parties* hereto, and *the cost of arbitration shall be born equally between both parties."* (Emphasis added.)

It is Union's contention that the court lacked jurisdiction to order the appointment of a third arbitrator or to direct the arbitrators to proceed, since the joint venture agreements did not contemplate statutory arbitration. In support of such contention it is argued that the first phrase of the quoted provisions negates any thought that the parties had in mind statutory arbitration, and that therefore the court lacked jurisdiction to entertain the proceeding.

It should be noted that it is now well established *". . .* by the adoption of the 1927 statute, the Legislature intended to adopt a comprehensive all-inclusive statutory scheme applicable to all written agreements to arbitrate, and that in such cases the doctrines applicable to a common law arbitration were abolished." (*Crofoot* v. *Blair Holdings Corp.,* 119 Cal.App.2d 156 [260 P.2d 156].) This same question was discussed in 38 California Law Review 799. The author notes that while the common law may be applicable to oral contracts, he suggests that it is not applicable to agree-

ments in writing. The writer further states that no special language is required but that the arbitration clause should provide that parties agree to accept the award as final and binding. ''It is reasonable that parties who voluntarily agree in writing to arbitrate should be bound by the statute and should not as an afterthought be permitted to escape from their contract through the portals of the common law.'' (38 Cal.L.Rev., p. 809.) Thus, in *Snyder* v. *Superior Court,* 24 Cal.App.2d 263 [74 P.2d 782], it was agreed that in the event of a dispute between the parties, such dispute would be submitted to a named arbitrator ''for determination.'' This court there held that to submit a dispute for determination is a tacit agreement to abide by that agreement. For as was there noted, there would be no reason to submit the dispute to an arbitrator other than for determination. Hence it necessarily follows that while the paragraph in question could probably have been drafted with more precision, there can be little question but that as the trial court found, the words ''any matter arising therefrom'' relate back to the word ''Agreement,'' and that thereby the arbitrators were authorized to decide any question concerning the joint venture agreements or arising therefrom, as well as the interpretation of the agreements; and that by the words, ''the decision of any two arbitrators shall be binding upon both parties,'' the parties agreed to accept the award as final and binding on them. In this regard the court specifically found that in using the quoted phrases, it was the intent of the parties that any dispute arising under the agreements should be determined by arbitration, and that all of the matters and disputes which were submitted to and determined by the board of arbitrators arose out of said agreements and the performance thereof. In support of such findings the record shows that both parties submitted to the arbitrators exhaustive specifications of its claims against the other. These claims, for the most part, dealt with what were and what were not proper charges against the joint ventures. In this regard the trial court further noted that to arrive at a proper determination of such charges, including interest, it was necessary to interpret the agreements in light of the claims presented.

It is Union's next contention that the arbitration provisions heretofore quoted are so indefinte and uncertain that they are incapable of specific performance. Its argument in this regard is but a restatement of its arguments in support of its

first contention. It follows that what we have said before is likewise determinative of this contention.

Union next contends that the trial court erred in denying its demand for a jury trial pursuant to the provisions of section 1282 of the Code of Civil Procedure, since it had placed in issue the question of whether or not it was in default in failing to arbitrate. The pertinent portion of that section provides as follows:

"A party aggrieved by the failure, neglect or refusal of another to perform under an agreement in writing providing for arbitration may petition any superior court of the county or city and county where either party resides, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of the hearing of such application shall be served personally upon the party in default. The court shall hear the parties, and upon being satisfied that the making of the agreement or such failure to comply therewith is not in issue, shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. If the making of the agreement or the default be in issue an order shall be made directing a summary trial thereof. Where such an issue is raised, the party alleged to be in default, may, on or before the return day of the notice of application, demand a jury trial of such issue, and if such demand be made, said court shall make an order referring the issue or issues to a jury called and impaneled in the manner provided for the trial of actions at law . . ."

In answer to the contention so made, Downer argues that section 1282 is not controlling in that its petition alleged the completion of the work contemplated by the joint venture agreements, the submission of conflicting claims by both parties, Downer's demand that Union proceed to arbitrate, the appointment by each party of an arbitrator, the inability of the two arbitrators so appointed to agree upon the matters to be arbitrated, their inability to agree upon a third arbitrator, and the request that the court appoint a third arbitrator as provided in section 1283 of the Code of Civil Procedure. That section reads in part as follows:

". . . [I]f a method be provided and any party thereto shall fail to avail himself of such method, or for any reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, or in the failure or refusal of any arbitrator or arbitrators or umpire to attend

or fulfill his or their duties, then, upon application by either party to the controversy, the court mentioned in section 1282 of this code shall designate and appoint an arbitrator or arbitrators, or umpire, as the case may require . . .''

From an examination of the pertinent portions of the two sections, it appears that section 1282 relates to and concerns only the acts of the parties prior to the commencement of the arbitration proceedings. If, however, as here, arbitration proceedings have been commenced and there has been a failure to appoint a third arbitrator, then the provisions of 1283 apply. Here the trial court was cognizant of the difference in the situations contemplated by the two sections when at the conclusion of the hearing upon plaintiff's petition it observed, ''The petition contains certain allegations within the provisions of Section 1283. There are other matters alleged in the reply. My view of the issues raised in the reply is that the grounds therein stated do not simply on the face raise any issues under the provisions of Section 1282, the Section that gives a right to a trial by jury. 'The making of the agreement' is not an issue. 'The failure to comply therewith.' The only failure to comply therewith that I can find in the pleadings and under the evidence is the failure to name the third arbitrator, an issue under Section 1283.''

We are in complete agreement with that statement. Neither Union nor Downer was in default since each had already appointed its arbitrator, and the two so appointed had commenced their arbitration pursuant to the agreement. Hence the only issue which was before the court was that there had been a failure to agree upon the third arbitrator. It follows that Union's demand for a jury trial was quite properly refused by the trial court.

Union next contends that the award must be vacated since the arbitrators exceeded their powers in determining claims as to breach of other contracts and in awarding interest and fixing their own fees. The essence of the argument in support of this contention by Union's counsel is but a restatement of his argument in support of his first contention; that is, the meaning of the arbitration paragraph. If, as we held in regard to that question, the arbitrators were authorized to determine any matter arising out of the joint venture agreements, then it would necessarily follow that they quite properly considered the interest due Downer, since Union held all of the bonds from the issuance thereof, and the costs and expenses of the arbitration and fees of the arbitrators were

necessarily a part of the duties contemplated by the arbitration provision.

Union further contends that the arbitrators were guilty of misconduct in refusing to postpone the meeting of July 14 at which the award was signed by Mr. Macomber and Mr. McGilvray in the absence of Mr. Clausen. However, as Downer points out, the meeting on July 14 was not a hearing as contemplated by subsection (c) of section 1288, Code of Civil Procedure, but a meeting to execute the formal award.

Finally Union attacks the sufficiency of the evidence and charges miscalculation of the arbitrators. However, it is the rule that,

". . . [T]he superior court upon motion to confirm, and this court on appeal, has no power to review the sufficiency of the evidence to sustain the award, and in fact the evidence produced before the arbitrator is not even made a part of the record on appeal. Under the 1927 statute, it is well settled that both before the superior and appellate courts every intendment of validity must be given the award and that the burden is upon the one claiming error to support his contention . . . It has been held that the arbitrator need not make findings or give reasons for his conclusions . . . Certainly it is settled that the courts have no power to review the sufficiency of the evidence. [Citations.] The law is not quite so clear as to a court's powers of review over questions of law. The earlier cases held that the court had the power to review errors of law, at least where they appeared upon the face of the award. [Citations.] The later cases have gone much farther in granting finality to the award even as to questions of law. In *Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.*, 29 Cal.2d 228, 233 [174 P.2d 441], it was bluntly held that 'The merits of the controversy between the parties are not subject to judicial review.' . . . 'Arbitrators, unless specifically required to act in conformity with rules of law, may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action.' [Citing cases.] . . .

"Under these cases it must be held that in the absence of some limiting clause in the arbitration agreement, the merits of the award, either on questions of fact or of law, may not be reviewed except as provided in the statute." (*Crofoot* v. *Blair Holdings Corp., supra,* 119 Cal.App.2d 156, 185-186.)

Therefore since every intendment is in favor of the validity of the award, the burden is upon the one claiming error to sustain his contention. Under the facts and circumstances disclosed by the record before this court, it cannot be said that Union has sustained the burden so cast upon it.

The order and judgment are affirmed.

Van Dyke, P. J., and McMurray, J. pro tem.,* concurred.

A petition for a rehearing was denied January 3, 1957, and appellant's petition for a hearing by the Supreme Court was denied February 6, 1957.

---

*Assigned by Chairman of Judicial Council.