[Civ. No. 23476.   Second Dist., Div. Two.   Apr. 10, 1959.]

IRA HARRIS, Respondent, v. R. C. HAVENAR, as Executrix, etc., et al., Appellants.

532

[REDACTED]

Boller, Suttner & Boller for Appellants.

William Katz for Respondent.

ASHBURN, J.—Appellants Havenar and Cantrall challenge a judgment for $2,000 in favor of respondent Ira Harris, doing business as B & H Electric, which was entered pursuant to an order affirming an arbitrators' award and denying appellants' motion to vacate, modify or correct the same.

J. R. Cantrall Company, a partnership, had a prime contract with Eleventh Naval District of the United States for the relocation of six steel frame buildings at the Long Beach naval shipyard. On June 11, 1956, Cantrall Company made a subcontract with respondent Ira Harris, doing business as B & H Electric, under which respondent undertook to furnish all labor, materials and other things necessary to complete in accordance with the plans and specifications all electrical work, including the removal of all electrical conduits and fixtures from the buildings which were to be moved. The prime contractor Cantrall agreed to "excavate, backfill, furnish and place concrete for the underground conduit under the supervision of the Subcontractor." Paragraph Eighth of the subcontract provides: "If at any time any controversy should arise between the Contractor and the Subcontractor regarding anything pertaining to this agreement and which the parties hereto do not promptly adjust and determine, or which the Architect cannot decide to the satisfaction of both parties, then the written orders of the Contractor shall be followed and said controversy shall be decided by arbitration upon completion of the work."

The subcontractor soon ran into trouble in pulling a certain cable through an underground conduit. This resulted in controversy with the prime contractor. Respondent's petition for an order directing arbitration alleged, and the court found

to be true, "that a controversy has arisen out of said contract and now exists between Petitioner and said JEAN R. CANTRALL and JOE G. CANTRALL which said controversy is as follows, to wit: whether or not Petitioner is entitled to be paid an extra for the performance of all work subsequent to the finding of a broken duct through which Petitioner was required to pull a cable and is entitled to all damages sustained by him in the furnishing of additional material and labor, including extra cable splicing, necessitated by or resulting from concrete left in such duct and the amount Petitioner is entitled to receive in payment therefor, if payment is an extra."

Before that application was presented the parties made a further written agreement, saying: "The existing dispute as to whether or not you [Harris] are entitled to be paid an extra for performance of all work subsequent to the finding of the broken duct through which you were to pull cable; and all damages sustained by you in material and labor (including extra cable splicing) resulting from concrete left in this duct, and the amount of payment you may be entitled to receive therefor, if the same is an extra, will be arbitrated at the end of the job by three arbitrators, one chosen by each of us and a third being selected by these two."

But Cantralls refused to proceed, hence the motion and order directing an arbitration of "the controversy now existing between them [Cantralls] and petitioner Ira Harris in accordance with the terms of said contracts." This order was obeyed and the arbitrators, with one member dissenting, made an award directing the Cantralls to pay to Harris the sum of $2,000 and declaring: "This AWARD shall constitute the full and complete satisfaction of any and all claims of either party against the other party."

In varying forms appellants attack the award upon the merits. The basic argument is that the arbitrators were wrong because the prime contract provided that the decisions of the contracting officer (of the Navy) should be final and this provision was incorporated by the specifications into the subcontract. It is asserted that twice the problem was submitted by Cantralls to the naval district by way of application for an allowance of an extra for the additional work done by Harris and both times the contracting officer rejected the claim and ruled that the work in question was necessitated by improper work of the subcontractor Harris, that improper pulling methods were employed; that this occurred before the hearing upon the application for an order directing arbitra-

tion and again after that order was made and before the arbitrators' hearings began. The argument of appellants is that these rulings were conclusively binding upon them and also upon the subcontractor. It is also said that any controversy between the general contractor and the subcontractor had ceased to exist before the arbitration hearings were had and hence the arbitrators acted upon a matter which was not submitted to them.

Of course, arbitrators are bound to act within the limits imposed by the arbitration agreement (*Drake* v. *Stein,* 116 Cal.App.2d 779, 785 [254 P.2d 613]; *Crofoot* v. *Blair Holding Corp.,* 119 Cal.App.2d 156, 184 [260 P.2d 156]; *Flores* v. *Barman,* 130 Cal.App.2d 282, 287 [279 P.2d 81]), but if they do so the merits of their awards are not open to court review (*Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.,* 29 Cal.2d 228, 233 [174 P.2d 441]; *Crofoot* v. *Blair Holding Corp., supra,* p. 186; *Downer Corp.* v. *Union Paving Co.,* 146 Cal.App.2d 708, 715 [304 P.2d 756]; *United States Plywood Corp.* v. *Hudson Lumber Co.,* 124 Cal.App.2d 527, 530 [269 P.2d 93]); they are not required to make findings, or give reasons for their conclusion, and faulty reasoning if disclosed does not vitiate (*Sapp.* v. *Barenfeld,* 34 Cal.2d 515, 522 [212 P.2d 233]; *Crofoot* v. *Blair Holdings Corp., supra,* p. 185; *Drake* v. *Stein, supra,* p. 785). In Crowfoot, *supra,* it is said at page 186: "Under these cases it must be held that in the absence of some limiting clause in the arbitration agreement, the merits of the award, either on question of fact or of law, may not be reviewed except as provided in the statute."

In *Sapp* v. *Barenfeld, supra,* at page 523: "Even though a party expressly asserts a lawful claim in the submission or raises it by the presentation of evidence to the arbitrators, the law does not guarantee that the claim will be allowed. Arbitrators, unless specifically required to act in conformity with rules of law, may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action."

The attempt to show that the arbitrators exceeded their jurisdiction in the present instance is predicated upon the claim that the controversy had disappeared before the arbitrators' hearings began and indeed before the court ordered an arbitration. The claim is that final authority to determine the dispute at bar rested in the contracting officer of the navy and when he decided the matter there could not be

any remaining controversy. However, the record shows that appellants were represented by counsel at the hearing of the application for an order directing arbitration, apparently opposing the same, and the court found that there was an arbitrable controversy as set forth in the petition and that appellants were in default with respect thereto. Surely respondent and the court did not agree that the controversy had ceased to exist.

The affidavit of Murray Merrin, the dissenting arbitrator, says: "The other arbitrators, Palmer and Friedman, base their decision upon the grounds that (1) the Navy was totally at fault and that the General Contractor in such a situation owed a duty to the subcontractor to take the entire responsibility; (2) the contract did not specifically require the subcontractor to inspect the conduit." Assuming this affidavit to be properly before the court as a showing of "what matters were submitted for decision and were considered by the arbitrators" (*Sapp* v. *Barenfeld, supra,* p. 523), it creates nothing more than a difference of opinion between the appellants and the arbitrators upon a question of law, a matter falling within the scope of the arbitration. At best, appellants show an error of law on the part of the arbitrators, but that does not give rise to a right in the court to correct the error.

Moreover, the record is in such shape that the court, were it in position to review errors of the arbitrators in matters of law, could not actually determine the matter in this instance. The prime contract and the specifications are not in the record, nor were they before the lower court, hence the basis for the claim of error is not present. Conclusional averments such as found in the J. R. Cantrall affidavit that "the evidence before the Board showed that" established no facts and must be disregarded.

Appellants' argument that there was "an evident miscalculation of figures" also fails of evidential support.

The judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.