Filed 2/13/24  Marczak v. Eslamdoust CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KRYSTYNA MARCZAK, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ARASH ESLAMDOUST et al., <br><br> Defendants and Appellants. | G062160 <br><br> (Super. Ct. No. 30-2019-01103402) <br><br> ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

This court hereby modifies the opinion filed on January 17, 2024, as follows:

1.　　On page 3, add footnote one, to the end of the second full paragraph, which begins with "On June 22, 2016 . . .":

[1.] Esla contends that to acquire Dahlberg's interest in the property, he was also required to pay $231,752.88 to remove Dahlberg's name from the first mortgage. While Esla filed a petition for rehearing arguing this fact is material, he has not clearly explained its materiality to our analysis.  However, we note the arbitrator

accounted for this payment when calculating the equalization payment described below.

2. On page 18, add footnote seven, to the end of the first full paragraph, which begins with "Next, Esla argues the arbitrator . . .":

7. In a petition for rehearing, Esla claims we did not address his argument that the judgment failed to include a disposition as to the claims against Restotech. But Esla's opening brief never argued the judgment had any errors. Rather, he argued the final award should be vacated or corrected because the arbitrator refused to rule on Marczak's claims against Restotech. While Esla's opening brief mentioned in passing that the *proposed* judgment omitted the claims against Restotech, nothing in the cited section claims the judgment had any errors.

3. On page 19, add footnote eight, to the end of the last full paragraph, which begins with "However, an arbitrator's failure . . .":

8. In a petition for rehearing, Esla appears to contend the method in which the arbitrator calculated the equalization payment was a material change from the January 2022 ruling. But, as set forth above, Esla has not shown the January 2022 ruling was a final award. (See *Lonky v. Patel*, *supra*, 51 Cal.App.5th at p. 844.)

4. On pages 8, 9, 11, 12 and 21, delete all 15 instances of the term "January 22 ruling" and replace with "January 2022 ruling."

5. On page 21, after the first full paragraph, which begins with "Further, there is no evidence . . ." add the following paragraph:

2

Likewise, Esla argues the arbitrator was required to disclose a potential bias under section 1281.95, subdivision (a). This statute requires an arbitrator in certain contexts to "disclose . . . whether the arbitrator or his or her employer or arbitration service had or has a personal or professional affiliation *with either party*." (§ 1281.95, subd. (a), italics added.) Nothing in the evidence shows either the arbitrator or JAMS had any personal or professional affiliation with Marczak. The statute is silent as to whether an arbitrator must disclose any such affiliation with a party's counsel. But, even if such a relationship needed to be disclosed, the statute would still not apply. Nothing in the record shows any professional affiliation between either the arbitrator or JAMS and Vanderpool. In the record before us, to the extent any professional affiliation existed (and we are not saying one did), it was between JAMS and OCTLA. OCTLA was not a party to the arbitration, nor did it represent either of the parties.

This modification does not change the judgment. (Cal. Rules of Court, rule 8.264(c)(2).) The petition for rehearing is DENIED.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOTOIKE, J.


3

Filed 1/17/24  Marczak v. Eslamdoust CA4/3 (unmodified opinion)


**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| KRYSTYNA MARCZAK,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ARASH ESLAMDOUST et al.,<br><br>    Defendants and Appellants. | G062160<br><br>(Super. Ct. No. 30-2019-01103402)<br><br>O P I N I O N |


Appeal from a judgment of the Superior Court of Orange County, James L. Crandall, Judge.  Affirmed.

C&K Law Group, Christopher K. Jafari and Kiarash Jafari for Defendants and Appellants.

The Vanderpool Law Firm, Douglas B. Vanderpool, Michael J. Fairchild and Brooke L. Bove for Plaintiff and Respondent.


\*          \*          \*

Respondent Krystyna Marczak and nonparty Carl Rickard Dahlberg were going through a divorce when their home in Costa Mesa (the property) burned down. They entered into an arrangement with defendant Anoushiravan Eslamdoust aka Tony Esla (Esla). Under the deal, Esla provided $50,000 to buy out Dahlberg's interest in the property. Esla also entered into a joint venture agreement with Marczak. His company would rebuild the property so it could be sold, and Esla and Marczak would split the sale proceeds. Unfortunately, the home was not rebuilt. Marczak and Esla then sued each other for rescission of the joint venture agreement, dissolution of the joint venture, and damages on various other claims.

The dispute was decided in arbitration. The arbitrator's final award rescinded the joint venture agreement, dissolved the joint venture, and denied all other claims. It granted Marczak full title to the property and ordered her to make an equalization payment to Esla based on their contributions to the joint venture. The trial court granted Marczak's petition to confirm the award and entered judgment. On appeal, Esla and his company contend the award must be vacated because the arbitrator issued a ruling in excess of his powers, refused to rule on various issues, disregarded material evidence, and failed to make required disclosures. We are unpersuaded by these arguments and affirm the trial court's judgment.

I

FACTS AND PROCEDURAL HISTORY

*A. Relevant Agreements*

Marczak acquired the property in 1999 with her then-husband, nonparty Dahlberg. A fire damaged the property in March 2016, while Marczak and Dahlberg were in the middle of divorce proceedings (the divorce action). At the time of the fire, there were two mortgages on the property. The first mortgage was owed by Marczak and

2

Dahlberg (the first mortgage), while the second was only owed by Marczak. Due to poor credit, Marczak was unable to refinance the property without assistance of a third party.

The property was insured by State Farm General Insurance Company (State Farm). State Farm referred Marczak to several companies that provided fire disaster clean-up and recovery services, including appellant Disaster Clean-up Construction Inc. dba Restotech Water & Fire Damage (Restotech), whose chief executive officer and president is Esla. Marczak engaged Esla and Restotech in discussions to rebuild the property. They developed a plan to buy out Dahlberg's interest in the property for $50,000. Esla would rebuild the property with insurance proceeds. The property would then be sold and Esla and Marczak would split the proceeds.

On June 22, 2016, the family court entered a stipulated judgment in the divorce action (the divorce judgment) that included the proposed rebuilding plan. The divorce judgment awarded Marczak the insurance proceeds from the property. It also stated that Marczak would "buy-out [Dahlberg's] interest in [the property] for $50,000 (lump sum) contingent upon an agreement being reached with the parties and a third party investor (hereinafter [Esla]). If an agreement [was] reached between the parties and [Esla], the $50k shall be deposited into an escrow account on 6/27/16 . . . and [would] be paid to [Dahlberg] as soon as practicable[]" considering any escrow contingencies or conditions.

The divorce judgment specified that if the deal with Esla went through, "[u]pon payment of the $50,000.00 from [Marczak] to [Dahlberg], [Marczak would] be awarded all right, title and interest in and to [the property], including, but not limited to, any and all insurance proceeds payable from the claim related to the . . . fire . . . ." Marczak had "90 days from 6/27/16 to refinance the property and/or to remove [Dahlberg] from the first mortgage and title and any all liability on [the property]."

3

If Marczak and Dahlberg were unable to reach a deal with Esla, the divorce judgment gave Marczak "30 days to find an alternate investor to buy [Dahlberg's] interest . . . in [the property] for $50,000 . . . ."

The divorce judgment explained, "The intent of this agreement [was] to allow [Marczak] to buy-out [Dahlberg's] interest in [the property] for $50,000, after which [Marczak would] be free to do whatever she [felt] appropriate with respect to [the property] (i.e., to rebuild or sell) . . . ." The court retained "jurisdiction over all issues concerning the sale of [the property]."

On June 30, 2016, Dahlberg and Esla entered into a "Purchase Contract and Joint Escrow Instructions" (the Esla-Dahlberg agreement), in which Dahlberg agreed to sell his 50 percent interest in the property to Esla for $50,000. The recitals of the Esla-Dahlberg agreement explain it was being made pursuant to the divorce judgment, in which Dahlberg agreed "to be bought out by a Third-Party investor for his undivided fifty . . . percent share in the Property."

That same day, Marczak and Esla entered into a "Co-Ownership and Joint Venture Agreement" (the JV agreement). The JV agreement's recitals explain, among other things, that (1) Marczak owned 50 percent of the property and that Esla was "to purchase the remaining fifty . . . percent of the Property from [Dahlberg] in a separate transaction," (2) Esla was to refinance or pay the first mortgage to relieve Dahlberg of his loan obligations, (3) Esla and Marczak would take title to the property as tenants in common with equal interests, (4) Marczak and Esla "wish[ed] to build . . . a Single Family Residence on the Property for sale with the insurance proceeds (the 'JV Property')," and (5) Restotech would be the contractor for the JV property. Profits from the sale of the JV property would be shared between Marczak and Esla after all liens on the property had been paid off and Esla's costs had been reimbursed.

4

The JV agreement would "enter[] full force" once Esla obtained Dahlberg's 50 percent interest in the property. It would be null and void if Esla was unable to obtain it.

The JV agreement also contained an arbitration clause, which required arbitration of "any controversy . . . between the parties . . . concerning this joint venture, construction of the JV-Property [*sic*], sale of the JV Property, or the rights and duties of either party under" the JV agreement (the arbitration clause).

The property was refinanced in September 2016. A final borrower statement from Granite Escrow shows Esla paid Dahlberg $50,000 and also contributed funds that, along with the insurance proceeds, paid off the first mortgage. Marczak and Dahlberg executed and recorded a grant deed transferring title in the property from themselves as joint tenants to Marczak and Esla as tenants in common with equal property interests.

The joint venture encountered numerous problems attempting to build the JV property following the refinance. First, there were funding issues. After State Farm made its initial insurance payment, Marczak and Esla sued it for breach of the insurance policy and bad faith. They eventually settled with State Farm for $75,000. The amount of the settlement was allegedly far less than Esla had predicted to Marczak, and the bad faith litigation appears to have taken far longer than the parties anticipated. Second, there were problems obtaining building permits due to unpermitted work on the property prior to the fire.

*B. Arbitration Proceedings*

Three years after the property's refinance, construction of the JV property had not yet begun. This prompted Marczak to file a complaint against Esla and Restotech in Orange County Superior Court in October 2019.

5

Esla responded by submitting an arbitration claim against Marczak to JAMS (the complaint). Esla sought (1) declaratory relief that the JV agreement was enforceable, (2) to dissolve the joint venture under Corporations Code section 16801, and (3) damages for Marczak's alleged breaches of contract and fiduciary duties.

Marczak then cross-complained against Esla and Restotech in JAMS, submitting the same complaint she had filed in the Superior Court. Generally, Marczak's cross-complaint alleged Esla had made false promises to induce her into entering the JV agreement and to grant him an interest in the property. She asserted claims for (1) promissory fraud, (2) intentional misrepresentation, (3) concealment, (4) rescission of the JV agreement, (5) breach of the JV agreement, (6) breach of fiduciary duty, (7) violation of Business and Professions Code section 17200, and (8) declaratory relief on various issues.

The parties stipulated to appoint Judge Franz E. Miller (Ret.) as arbitrator (the arbitrator). The arbitration hearing occurred in October 2021. Following the hearing, the arbitrator issued an "Arbitration Ruling" on January 24, 2022 (the January 2022 ruling). The arbitrator could not find "by a preponderance of the evidence either side acted via fraud or that either party's conduct or state of mind fell below that required for an adequate exercise of fiduciary duty." Rather, he concluded that neither party foresaw the funding and permit issues. Thus, the arbitrator granted relief "to the extent the parties [sought] rescission of [the JV agreement] and/or [to dissolve] their joint venture." He denied all other relief.

The arbitrator determined each party was entitled to restitution of the funds they had contributed to the joint venture. He instructed the parties to submit a list of their expenditures. Finally, the arbitrator stated he was "inclined to order each party to bear her/his attorney fees, as neither side appear[ed] to have 'prevailed' in the arbitration."

6

## C. Requests for Clarification and Correction

Following the January 2022 ruling, both parties asked the arbitrator to clarify several issues. Among other things, Esla asked the arbitrator to clarify the restitution order. Marczak sought clarification on the property's disposition. She asked to be awarded sole title to the property and argued selling the property would be inequitable and result in a windfall to Esla. She also argued the arbitrator lacked authority to dissolve the joint venture.

The arbitrator held a hearing on the clarification requests and issued a "Minutes Regarding Teleconference on Clarification of Arbitration Ruling" in March 2022 (the March 2022 minutes). In the March 2022 minutes, the arbitrator found "he has the power to dissolve the joint venture and to order certain restitution to the parties." He concluded Esla and Restotech were "entitled to restitution of the $50,000 paid to [Dahlberg] to facilitate the joint venture." But they were "not entitled to an interest in the property, as any ownership interest they may have gained via the payment was only for the purpose of facilitating the rebuild and sale that were . . . not completed." The arbitrator also directed the parties to provide a chart showing their respective contributions to the joint venture.

The parties subsequently submitted charts of their claimed financial contributions. Esla and Restotech also submitted a request to correct the March 2022 minutes. Generally, they argued the arbitrator had violated the law and exceeded his powers by granting Marczak sole title to the property and limiting them to restitution based on their joint venture contributions.

The arbitrator conducted another hearing and issued "Minutes Regarding Hearing on Ruling" in April 2022 (the April 2022 minutes). In the April 2022 minutes, the arbitrator ruled he was authorized to grant Marczak title to the property. He explained Esla and Marczak had intended for Esla to pay Dahlberg $50,000 to take title of the property, build the JV property so it could be sold, and then split the proceeds. But

7

"[t]hrough the mutual mistake of the parties, and a number of eventualities beyond their control, it [became] impracticable and/or impossible to do so." Thus, it was proper to dissolve the joint venture, restore title to Marczak, and have the parties bear their own attorney fees and costs.

In the April 2022 minutes, the arbitrator asked Marczak to draft and submit a proposed arbitration award, which she did. Esla and Restotech objected to the proposed award. They also moved to disqualify the arbitrator based on apparent bias in favor of Marczak's counsel, Douglas Vanderpool. Generally, Vanderpool and the arbitrator are both associated with the Orange County Trial Lawyers Association (OCTLA), and JAMS has sponsored some of OCTLA's events. In the alternative, Esla and Restotech asked JAMS and the arbitrator to provide information concerning their contacts and dealings with Vanderpool, his firm, and OCTLA.

JAMS denied their challenge to disqualify the arbitrator and also denied their request for information.


## D. Final Arbitration Award

The arbitrator issued a "Final Arbitration Award" on August 15, 2022. Esla again requested a correction, and the arbitrator issued an "Amended Final Arbitration Award" on August 30, 2022 (the final award).

The final award mirrored the January 22 ruling and the March and April 2022 minutes. First, the arbitrator found Esla and Restotech should be treated as the same party for purposes of the final award. He then found the parties failed to foresee the problems getting insurance funds and building permits, which "constituted a mutual, reasonable mistake of fact." As in the January 22 ruling, the arbitrator rescinded the JV agreement, dissolved the joint venture, and denied all other relief. Specifically, he "rule[d] in favor of Esla and against Marczak on his claim for dissolution of joint venture

8

and denie[d] the balance of his claims. [He also] grant[ed] Marczak's counter-claim for rescission of contract, and denie[d] the balance of her counter-claims."

The arbitrator ordered Esla to transfer his interest in the property to Marczak. He explained, "The evidence was overwhelming the parties agreed to the procedure where [Dahlberg] would transfer his 50% interest in the house to Esla, not so Esla would become a half-owner for all time and for all purposes, but to facilitate the division of profits after the house was rebuilt and sold. [¶] [Dahlberg] was bought out of his ownership interest in the house for a sum he deemed adequate. The arbitrator presumes he would have similarly been bought out by Marczak if the Esla-Marczak venture would not have arisen. [¶] Restitution of the $50,000 Esla paid to [Dahlberg] makes him whole. Anything more would give him a windfall in a venture gone bad through mutual mistake."

The arbitrator then directed Marczak to make an $18,922 equalization payment to Esla. This calculation was based on each party's claimed contributions to the joint venture, which the arbitrator accepted. Esla claimed $358,268.16 in contributions including his $50,000 payment to Dahlberg, while Marczak claimed $320,423.37. Based on these contributions, the arbitrator found Esla had contributed $37,844 more to the joint venture than Marczak and ordered her to pay Esla half that amount, i.e., $18,922. In other words, Esla's $50,000 in restitution for the Dahlberg payment was factored into the $18,922 equalization payment.

Finally, consistent with the January 22 ruling, the parties were ordered to bear their own attorney fees and costs since neither had prevailed.


E.  *Court Proceedings*

Marczak filed a petition to confirm the final award in the trial court. Esla and Restotech opposed her petition and filed their own petition to vacate the final award.

9

The court granted Marczak's petition to confirm and denied the petition to vacate. It then entered judgment in accordance with the final award.

On appeal, Esla and Restotech contend the trial court should have vacated the final award because the arbitrator (1) exceeded his powers, (2) refused to rule on submitted issues, (3) disregarded material facts, and (4) failed to disclose his connections to Marczak's counsel.[1]

## II

## DISCUSSION

### A. Applicable Law

"On appeal from an order vacating or confirming an award, we review the trial court's findings of fact for substantial evidence and its legal conclusions de novo." (*Starr v. Mayhew* (2022) 83 Cal.App.5th 842, 850 (*Starr*).) However, we give great deference to the final award. "'[W]ith narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law.'" (*Baker Marquart LLP v. Kantor* (2018) 22 Cal.App.5th 729, 739.) Code of Civil Procedure section 1286.2 contains the exclusive grounds for vacating an arbitration award.[2] (See *Luster v. Collins* (1993) 15 Cal.App.4th 1338, 1344–1345.) Outside these grounds, "a court may not vacate an award for legal or factual error even if the error clearly appears on the face of the award and it causes substantial injustice." (*Ibid.*)

Under section 1286.2, subdivision (a), a trial court must vacate an arbitration award if (1) it was procured by corruption, fraud, or undue means, (2) the

---

[1] Since Esla and Restotech are functionally the same for purposes of this appeal, we will refer to them collectively as "Esla" for the remainder of the opinion unless otherwise specified.

[2] All further undesignated statutory references are to the Code of Civil Procedure.

10

arbitrator was corrupt, (3) arbitrator misconduct caused substantial prejudice to a party, (4) the arbitrator exceeded his or her powers and the award cannot be corrected without affecting the decision's merits, (5) a party's rights were substantially prejudiced by the arbitrator's refusal to postpone a hearing or hear material evidence, or (6) the arbitrator failed to disclose a ground for disqualification or was subject to disqualification.

## B. Section 1286.2, Subdivision (a)(4)

Esla argues the award should be vacated under section 1286.2, subdivision (a)(4), because the final award exceeded the arbitrator's powers in several different ways. We disagree.

### 1. Award revision

Arbitrators have limited power to revise an award. (*Starr*, *supra*, 83 Cal.App.5th at p. 851 [explaining an arbitrator's limited powers to correct or amend an award].) Esla maintains the arbitrator exceeded his authority by improperly revising the January 22 ruling, which he asserts is materially different from the final award.

However, an arbitrator's power to revise is only limited once an award has been issued. (*Lonky v. Patel* (2020) 51 Cal.App.5th 831, 842-843.) Put differently, these limitations do not apply to a ruling that is not an "'award.'" (*Id.* at p. 844.) Thus, "whether an arbitrator's ruling constitutes an 'award' is a significant event." (*Id.* at p. 843.) To be an "award," a written ruling must generally include a determination of all the questions necessary to determine the controversy. (*Id.* at p. 844.) An award must "conclusively determine[] the matter submitted, leaving nothing to be done but to execute and carry out the terms of the award." (*Trollope v. Jeffries* (1976) 55 Cal.App.3d 816, 823.)

11

Esla provides no argument the January 22 ruling is an award. He simply presumes it is. That is insufficient to meet his burden, and his argument on this issue is waived. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

Besides, even if we were to address the issue, we would find the January 22 ruling is not an award because it does not decide all the necessary issues of the parties' dispute. Significantly, it does not address the property's disposition. It also fails to include the amount of restitution awarded to each party and leaves this issue for future determination. Further, while not dispositive, it does not appear the arbitrator intended the January 22 ruling to be an award. It is labeled as an "Arbitration Ruling," not an award. It also ends by stating, "[Esla's] attorneys to prepare the interim arbitration award," which indicates the arbitrator intended the January 22 ruling to precede the issuance of an award.

### 2. *Jurisdiction*

Next, Esla argues the family court had exclusive jurisdiction over all issues concerning the transfer of the property from Dahlberg to Esla, and the arbitrator had no subject matter jurisdiction to undo this transfer.

Esla's argument is based on language in the divorce judgment stating, "[Marczak and Dahlberg] stipulate and recognize that there is no possible way that they can cover every contingency and potential issue *regarding the buy-out of [the property]* as forth herein . . . , but they are hereby acknowledging and stipulating that they shall both cooperate in all aspects regarding the buy-out, transfer and settlement of the pending insurance claims related thereto. As such, the Court shall retain the broadest jurisdiction over all issues concerning the sale of the [property]." (Italics added.)

In the above language, the family court retained jurisdiction over issues concerning the "sale" of the property. Based on the italicized language above, the court is referring to Marczak buying out Dahlberg's interest in the property. As indicated in

12

the above paragraph, the court reserved jurisdiction over the buyout process because Marczak and Dahlberg could not anticipate all issues that might arise during that process. Nothing in the above paragraph indicates the family court intended to reserve jurisdiction over all disputes that might later arise between Marczak and Esla (or another third party investor) that did not involve Dahlberg.

Here, the final award has no bearing on Dahlberg's rights and, as such, does not infringe on the family court's jurisdiction. Dahlberg's interest was bought out years ago. Under the divorce judgment, his property interest was awarded to Marczak upon receipt of the $50,000 payment, which he received in 2016. The divorce judgment states, "Upon payment of the $50,000.00 from [Marczak] to [Dahlberg], [Marczak] shall be awarded all right, title, and interest in and to [the property] . . . ." It further explains, "The intent of this agreement is to allow [Marczak] to buy-out [Dahlberg's] interest in [the property] for $50,000.00, *after which* [*Marczak*] *shall be free to do whatever she feels appropriate with respect to* [*the property*] (i.e., rebuild or sell) . . . ." (Italics added.)

The final award does not divest Dahlberg of the $50,000 payment or affect any of his rights under the divorce judgment. Rather, it addresses a dispute solely between Esla and Marczak over their joint venture.

Esla contends the divorce judgment "specially called for [him] to acquire Dahlberg's one-half interest in the Property" in exchange for the $50,000 payment and the paying off the first mortgage. But the paragraph above shows this is inaccurate. Marczak was awarded Dahlberg's property interest upon receipt of the $50,000. Under the divorce judgment, Esla – or an alternate investor if the Esla deal fell through – was only a funding mechanism to allow Marczak to buy out Dahlberg's interest in the

13

property. The divorce judgment did not grant him any right to purchase an interest in the property.[3]

### 3. *Ruling on unsubmitted issues*

An arbitration award that "decide[s] unsubmitted issues is required to be vacated by the terms of section 1286.2(d) as in excess of the arbitrator's powers." (*Cobler v. Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518, 530.) For example, if the arbitration pleadings only raise contract issues, an arbitrator cannot award tort damages. (See, e.g., *ibid*. at pp. 530-531.)

Esla asserts the arbitrator had no authority to issue rulings on two unsubmitted issues. First, the arbitrator rescinded the JV agreement based on mutual mistake even though Marczak only sought rescission based on fraud or undue mistake. Second, Esla's complaint only sought dissolution of the joint venture under Corporations Code section 16801, and Esla contends the final award does not dissolve the joint venture in compliance with this section.

Esla's argument relies on an overly restrictive definition of "issue." Marczak's claim for rescission based on fraud or undue mistake only provided a legal theory to accomplish rescission of the JV agreement. But the broad issue she presented in her cross-complaint was whether the JV agreement should be rescinded. For instance, the prayer for relief in her cross-complaint sought a declaration the JV agreement "has been rescinded" without specifying the legal theory. Similarly, Esla's citation to Corporations Code section 16801 was a legal theory under which the joint venture could be dissolved. But the broad issue encompassed by his complaint was whether the joint

---

[3] Esla also cites portions from the divorce judgment in which the family court reserved jurisdiction to rule on issues concerning Dahlberg's buyout with an alternate investor if the Esla deal fell through. Since the buyout deal was completed, it is unclear why these citations are relevant.

14

venture should be dissolved. Like Marczak, his complaint's prayer for relief asked for dissolution of the joint venture without specifying the legal theory.

We have not been cited any authority suggesting arbitrators can only rule on the specific legal theories presented to them. Instead, arbitrators are empowered to determine the questions necessary to reach a decision on the ultimate issues and then fashion an appropriate remedy. (*Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415, 1434-1435.) That occurred here. After hearing the evidence, the arbitrator found rescission of the JV agreement and dissolution of the joint venture were proper but under different theories than the parties presented. He then issued a remedy granting Marczak title to the property and awarding Esla $18,922.

Esla also claims the arbitrator's remedy violates the Corporations Code. Even if this were true, the arbitrator was not bound to follow the Corporations Code when issuing his remedy. An arbitrator's "choice of remedy . . . may at times call on any decisionmaker's flexibility, creativity and sense of fairness. In private arbitrations, the parties have bargained for the relatively free exercise of those faculties. Arbitrators, unless specifically restricted by the agreement to following legal rules, '"may base their decision upon broad principles of justice and equity. . . ." [Citations.] "[A]rbitrators are not bound to award on principles of dry law, but may decide on principles of equity and good conscience, and make their award *ex aequo et bono* [according to what is just and good]."'" (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 374–375.)

Esla's citations to *Navarro v. Perron* (2004) 122 Cal.App.4th 797, and *O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, are unpersuasive. *Navarro* was not an arbitration case. (*Navarro*, at pp. 799-800.) In *O'Flaherty*, the arbitration agreement forbade the arbitrator from granting a remedy "'not available in a court of law.'" (*O'Flaherty*, at pp. 1057, 1061.) There is no such limitation in the arbitration clause here.

15

### 4. *Scope of the arbitration clause*

Esla maintains his right to purchase a 50 percent interest in the property arose from the Esla-Dahlberg agreement, which was separate from the JV agreement.[4] By transferring his property interest to Marczak, Esla asserts the arbitrator improperly deprived him of a right that was not subject to the arbitration clause.

It is immaterial whether Esla obtained his property interest through a separate agreement. Both Esla and Marczak contributed their respective property interests to the joint venture to build the JV property so it could be sold for profit. After it failed, the arbitrator resolved disputes between Marczak and Esla "concerning [the] joint venture," as authorized by the arbitration clause. Namely, he rescinded the JV agreement and dissolved the joint venture. Then, in deciding how to equitably dissolve the joint venture, the arbitrator transferred Esla's interest in the property to Marczak and awarded Esla restitution. Esla has not reasonably explained why the arbitrator could not order this remedy. (See *Advanced Micro Devices, Inc. v. Intel Corp.*, *supra*, 9 Cal.4th at p. 374–375, 383 [explaining arbitrators' broad powers in crafting remedies].)

Though we do not review the arbitrator's reasoning for the remedy, we find his explanation worth repeating: "The evidence was overwhelming the parties agreed to the procedure where [Dahlberg] would transfer his 50% interest in the house to Esla, not so Esla would become a half-owner for all time and for all purposes, but to facilitate the division of profits *after* the house was rebuilt and sold."

Esla also contends his property interest should have been transferred to Dahlberg rather than Marczak, and the arbitrator exceeded his power by determining Dahlberg's rights since he is not bound by the arbitration clause. (Citing *Benaroya v.*

---

[4] Esla also argues the Esla-Dahlberg agreement predates the JV Agreement. This is incorrect. They were both entered into on June 30, 2016. While the JV agreement's signature pages indicate Esla and Marczak executed the JV agreement on July 9 and 10, 2016, its opening paragraph establishes its effective date as June 30, 2016.

*Willis* (2018) 23 Cal.App.5th 462, 469.) As discussed above, under the divorce judgment, Dahlberg's property interest was bought out for $50,000 and transferred to Marczak. The final award does not affect Dahlberg's payment and, therefore, has no bearing on his rights.

## C. *Section 1286.2, Subdivision (a)(5)*

### 1. *Ruling on submitted issues*

An award may also be vacated under section 1286.2, subdivision (a)(5), if an arbitrator fails to rule on all the issues submitted by the parties. (See *Banks v. Milwaukee Ins. Co.* (1966) 247 Cal.App.2d 34, 38.) Esla argues the arbitrator refused to rule on various issues. Specifically, he asserts the final award does not discuss some of the arguments he expressly asked the arbitrator to address. But arbitrators are not required to make factual findings or even give reasons for their conclusions. (*National Union Fire Ins. Co. v. Superior Court* (1967) 252 Cal.App.2d 568, 571; *Harris v. Havenar* (1959) 169 Cal.App.2d 531, 534.) Thus, the arbitrator was not required to address any of Esla's specific arguments, even if requested.

Esla contends the arbitrator's refusal to address some of his legal arguments also shows a manifest disregard for the law. (Citing *Hall Street Associates, L.L.C. v. Mattel, Inc.* (2008) 552 U.S. 576, 584.) "To vacate an arbitration award on this ground, '[i]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it.'" (*Lagstein v. Certain Underwriters at Lloyd's, London* (9th Cir. 2010) 607 F.3d 634, 641.) This appears to be a federal standard for vacation, however, and Esla has not established it applies here.[5] (Knight, et al., Cal. Practice Guide: Alterative Dispute Resolution (The Rutter Group 2022) ¶ 5:457, p. 5-512.) Regardless, in this

---

[5] We also note that some federal courts have not adopted this standard for vacating arbitration awards. (*Baravati v. Josephthal, Lyon & Ross, Inc.* (7th Cir. 1994) 28 F.3d 704, 706.)

appeal Esla repeats the same legal arguments he claims the arbitrator ignored. Since we have also rejected them, Esla has not shown any manifest disregard for the law.

Next, Esla argues the arbitrator failed to provide a decision on Marczak's claims against Restotech for breach of fiduciary duty and violation of Business and Professions Code section 17200. Not so. The final award denies these claims against Restotech. While the final award focuses on Esla, the individual, it explains that he and Restotech are "treated as the same entity for purposes of [the] award." Then, after granting Marczak's counterclaim for rescission of the JV agreement, the final award specifies "the balance of her counter-claims" are denied.

### 2. *Material Evidence*

Esla also contends he was substantially prejudiced because the arbitrator refused to hear material evidence. (Citing § 1286.2, subd. (a)(5).) His exact argument is difficult to parse. He appears to take issue with a portion of the final award stating, "The arbitrator presumes [Dahlberg] would have similarly been bought out by Marczak if the Esla-Marczak venture would not have arisen." Esla apparently believes the arbitrator ignored evidence the property would have gone to Dahlberg had the Marczak-Esla deal fallen through.

"To find substantial prejudice, the court must . . . conclude the arbitrator might well have made a different award had the evidence been allowed." (*Epic Medical Management, LLC v. Paquette* (2015) 244 Cal.App.4th 504, 518.) Here, even if the arbitrator ignored the above evidence, which Esla has not established, it is unclear whether it had any bearing on the arbitrator's rescission of the JV agreement, dissolution of the joint venture, denial of the remaining claims, or remedy. (*Ibid.*) Esla has not

18

explained any of these links. As such, the argument as waived. (*Benach v. County of Los Angeles*, *supra*, 149 Cal.App.4th at p. 852.)

Esla appears to have clarified part of his position at oral argument. He asserted the arbitrator refused to hear material evidence by failing to accept the parties' stipulated facts. Prior to the arbitration hearing, the parties stipulated that Esla had contributed $358,268.16 to the property, while Marczak had contributed $65,726.50 plus home insurance premiums. After the arbitration hearing, the arbitrator asked the parties to submit charts showing their contribution amounts. Marczak submitted a chart showing she had contributed $320,423.37, consisting of $65,726.50 in mortgage payments and $254,696.87 in insurance funds from State Farm. In the final award, the arbitrator accepted the $320,423.37 in contributions claimed in Marczak's chart when calculating the $18,922 equalization payment. By accepting Marczak's chart, Esla claims the arbitrator ignored the prehearing stipulation in which the parties agreed she had only contributed $65,726.50 plus premiums.

However, an arbitrator's failure to accept a stipulated fact is not a ground to vacate an award. (See *Gonzales v. Interinsurance Exchange* (1978) 84 Cal.App.3d 58, 63 ["[F]ailure to consider evidence is not a ground to vacate [an] award"] (*Gonzales*).) Under section 1286.2, subdivision (a)(5), courts may intervene when an arbitrator unfairly prevents a party from introducing evidence. (*Gonzales*, at p. 63; *Epic Medical Management, LLC v. Paquette*, *supra*, 244 Cal.App.4th at p. 518.) But once evidence has been admitted, the arbitrator has heard it. And the arbitrator is free to ignore the admitted evidence. (*Gonzales*, at p. 63.) Here, the arbitrator allowed the parties to file their stipulated facts. He simply chose to ignore the fact concerning Marczak's contributions. At most, the arbitrator made a factual error which is not reviewable by the courts. (*Moncharsh v. Heily & Blase (*1992) 3 Cal.4th 1, 6, 11-12.)

19

*D. Section 1286.2, Subdivision (a)(6)*

"'[A]n arbitrator's failure to make a required disclosure requires vacation of the award, without a showing of prejudice.'" (*Grabowski v. Kaiser Foundation Health Plan, Inc.* (2021) 64 Cal.App.5th 67, 76; § 1286.2, subd. (a)(6).) "[A]rbitrators are required to disclose to the parties "'any dealings that might create an impression of possible bias.""" (*Kaiser Foundation Hospitals, Inc. v. Superior Court* (1993) 19 Cal.App.4th 513, 517.) ""'An impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased *for or against a party for a particular reason*.""" (*Speier v. The Advantage Fund, LLC* (2021) 63 Cal.App.5th 134, 147.) This is an objective standard. (*Ibid.*)

Esla argues the final award must be vacated because the arbitrator and JAMS failed to disclose the following links to OCTLA: (1) Marczak's attorney, Vanderpool, has held several board and officer positions in OCTLA, (2) JAMS advertises in OCTLA's quarterly magazine and has sponsored OCTLA events for years, including events installing Vanderpool as an officer or board member, (3) in his installation as OCTLA's president, Vanderpool thanked the event's sponsors generally, (4) the arbitrator attended OCTLA events where Vanderpool's firm sponsored valet parking, coffee, and snacks, and (5) the arbitrator attended Vanderpool's installation as OCTLA president.

These facts are insufficient to create an impression of possible bias. Given they all work in the legal field, judges, arbitrators, and practicing attorneys are commonly members of the same bar groups. Shared membership in such groups is insufficient to create an impression of bias. (*Gonzales*, *supra*, 84 Cal.App.3d at p. 64; *San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Elec. Co.* (1972) 28 Cal.App.3d 556, 567.) Likewise, we cannot infer the arbitrator was biased towards Vanderpool because JAMS, the organization he works for, advertises with OCTLA and donates money to it. (See *Ceriale v. AMCO Ins. Co.* (1996) 48 Cal.App.4th 500, 505.) Any benefits the arbitrator

20

or Vanderpool may have gained from such advertising and donations are too attenuated to create an impression of bias.

Further, there is no evidence of any relationship between the arbitrator and Vanderpool. The record only shows the two men were members of the same organization. Vanderpool declared he has "never invited [the arbitrator] to any event, nor had any personal or professional conversations with [him] of any kind other than maybe saying 'hello' at an event." In *San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Elec. Co.*, *supra*, 28 Cal.App.3d at pages 567-568, no impression of bias was created as a matter of law where an arbitrator-appraiser and a party's witness referred cases to each other once or twice a year. That is a much stronger relationship than the one between Vanderpool and the arbitrator here. At most, the evidence shows a professional relationship between OCTLA and JAMS but not one between Vanderpool and the arbitrator.

Esla also asserts the January 22 ruling favored him. But after the arbitrator attended Vanderpool's installation as OCTLA president in February 2022, he claims the arbitrator reversed the January 22 ruling to find in favor of Marczak. This is unsupported by the record. Comparing the January 22 ruling to the final award shows no such reversal. The January 22 ruling found the joint venture failed through no fault of the parties. Thus, it ordered rescission of the JV agreement and dissolution of the joint venture but denied all other relief. It also determined that neither side had prevailed. The final award made these same findings.

The final award did differ from the January 22 ruling in one important aspect: it included a remedy granting Marczak title to the property and ordered her to pay Esla $18,922. But the final award's addition of a remedy was not a reversal of the January 22 ruling. Rather, it determined an issue that was not decided in the January 22 ruling, i.e., the proper remedy, and the remedy was consistent with the arbitrator's prior findings on the rescission and dissolution issues.

21

III

DISPOSITION

The judgment is affirmed.  Marczak is entitled to her costs on appeal.


MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOTOIKE, J.

22